|     |     |
| --- | --- |
| 179 | 175 |
| 205 | ¹108 |
| 179 | 175 |
| 34 SC | ⁴546 |
| 34 SC | 548 |
| 179 | 175 |
| ¹38SC | ¹194 |
| 179 | 175 |
| 41SC⁵ | 14 |

W. E. Bartley, W. J. Burton, A. R. Burton, T. H. Burton and E. E. Young, surviving partners of Williamson Bartley, late partners, trading as the Farmers' Oil Company, and W. C. McCandless and W. J. Marks, partners, trading as McCandless & Marks, and J. J. Leidecker and L. E. Brackney, *v.* Thomas W. Phillips, Appellant.

*Lease—Oil and gas lease—Clause of forfeiture.*

The clause of forfeiture or termination of the estate usually incorporated in oil and gas leases in this state is for the benefit of the lessor, and as against him no act of the lessee can work a forfeiture without his concurrence.

Parties who lease or buy oil or gas lands, with a term apparently outstanding, without inquiry of the lessee, and without the exercise of the lessor's power to forfeit, take the risk of the fact of abandonment of the first lease as the facts may be found by the jury.

Defendant leased oil and gas lands from the owner. He had notice of the fact that there was an outstanding lease of ten years to plaintiffs, only three years of which had expired. The grantor of the lessor of defendant refused in his deed to assert a forfeiture of the first lease. Defendant made no inquiry of the plaintiffs as to whether their lease had been terminated. *Held*, (1) that the defendant had sufficient notice to put upon him the duty of inquiry; (2) that it was a question for the jury to determine whether there had been an abandonment of the first lease.

*Evidence—Testimony as to party's intention.*

While in the case of a contract one party may not testify to an intent not disclosed at the time, in other cases, as where the character of the transaction depends on the intent of the party, it is competent for him to testify what his intention was.

In an action of ejectment to recover oil and gas lands where the plaintiffs claim under a lease from the owner, and the defendant claims under a later lease from a grantee of the same owner, it is competent for the plaintiffs to testify that in removing certain materials from the land, they had no intention to abandon the lease.

Argued Oct. 19, 1896. Appeal, No. 112, Oct. T., 1896, by defendant, from judgment of C. P. Butler Co., June T., 1892, No. 80, on verdict for plaintiffs. Before Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Ejectment for land in Penn township covered by an oil and gas lease. Before Greer, P. J.

The suit was brought jointly against the defendant, Phillips, and W. V. Hardman. The latter filed a disclaimer, and the jury was sworn as to Phillips alone.

At the trial it appeared that on September 8, 1888, J. A. Hartzell leased to plaintiffs seventy acres of land for oil purposes. The lease was for the term of ten years. By the terms of the contract plaintiffs were to commence operations for mining purposes within thirty days from the execution of the lease, and when work was commenced it was to be prosecuted with due diligence until completion or abandonment. Plaintiffs commenced operations upon the land within fifteen days after the execution of the lease, and drilled a well, finishing it in the latter part of October, 1888. Defendants in their abstract of title claimed title under Hartzell by lease dated in 1891, and averred that plaintiffs had abandoned their rights under their lease. It appeared that after the execution of the first lease Hartzell conveyed the land by deed to one Zeigler, and in the deed expressly excepted plaintiffs' lease from the covenant of warranty. Zeigler executed an oil and gas lease to Samuel Walker who assigned it to the defendant, Phillips.

Wm. Burton, one of the plaintiffs, testified:

" Q. State what your intentions were at the time you took away this material from this well with regard to operating in the future on this lease? "

This question of the intention of the parties was objected to; that it was a secret, material operation, undisclosed to anyone or communicated to anyone, not competent to be contradicted, and in and of itself incompetent evidence for the purpose offered.

By the Court: We will receive this testimony. Bill of exceptions sealed.

" A. My intentions always were to go back and help to drill a well there." [19]

Other plaintiffs testified similarly under similar rulings of the court, upon similar objections and exceptions. [23–27]

Plaintiffs' points and answers thereto among others were as follows:

4. To declare a forfeiture of plaintiffs' lease, it must be clearly proved that the plaintiffs have failed to do what they agreed to do when they obtained their lease; the forfeiture

must be according to good conscience, equitable and right, and the defendant, who asserts this forfeiture, must have acted in good faith to the plaintiffs. If the jury find that the plaintiffs kept their agreement or understanding with Hartzell when they obtained their lease by the completion of one well with due diligence, and were never called upon to drill other wells, or if they find that Hardman had the lease taken in Samuel Walker's name for the purpose of introducing an apparent innocent purchaser who would have no notice of plaintiffs' lease, and that Walker furnished no money to purchase the lease, but it was furnished by Hardman, the defendant cannot set up a forfeiture as a defense in this action. *Answer:* Affirmed. [4]

5. If the jury believe that Hardman, the agent of Phillips, took the lease in the name of Samuel Walker for the purpose of first getting it upon the record, and having it taken in the name of an apparent innocent purchaser so as to defraud the plaintiffs out of their claim of title, the fraud of Hardman is the fraud of Phillips, although Phillips may have been no party to the fraud at the time, and may not have authorized it. He cannot adopt and take the benefit of a fraudulent title obtained by his agent and repudiate the fraud by which it was obtained. *Answer:* Affirmed, but as a principle of law I think there was no fraud upon the plaintiffs. [5]

6. If the jury find that the defendant, or Hardman, his agent, had the lease taken by Samuel Walker merely for the purpose of preventing plaintiffs from asserting a right to the land under their lease, although that right may not have been well founded; that it was taken in Walker's name for the purpose of introducing an apparent innocent purchaser who would have no notice of plaintiffs' lease, and that Walker furnished no money to purchase the lease, but it was furnished by Phillips or Hardman, the jury may infer that Phillips or his agent had actual notice of all facts which would sustain plaintiffs' lease as a valid lease, whether those facts were contained in the lease or not. *Answer:* This is a fact which the jury may consider in determining whether or not the defendant's agents had actual knowledge of the verbal, contemporaneous agreement, and if the agents or either of them had such notice, it is notice to the defendant, and the jury may draw an inference from this transaction as to actual notice to the agents. [6]

7. The defendant, Phillips, through his agent, Hardman, having actual notice of plaintiffs' lease when the lease to Samuel Walker was taken, and that the term of ten years had not then expired, if he claimed that the title to the lease had been lost by plaintiffs by forfeiture or abandonment, it was his duty to inquire of the plaintiffs before taking the lease, respecting the kind of title claimed by plaintiffs, and the facts upon which their title was based, and especially to make inquiry of plaintiffs whether their lease had been lost by forfeiture or abandonment, and if not, why not, and the defendant in law has notice of all that such inquiry would have disclosed, if made. *Answer:* Affirmed. [7]

8. Hardman, as agent of Phillips, having actual notice of plaintiffs' lease when the lease to Walker was taken, knew that the validity of plaintiffs' lease depended upon whether plaintiffs' rights had been lost by reason of failure on their part to operate, and involved the question whether the owner of the land under all the facts had the right to, or whether it was equitable and just that he should, assert a forfeiture or abandonment of plaintiffs' lease. These questions would not be determined by inspection of the contract between Hartzell and plaintiffs alone. Further inquiry was indispensable. It was the duty, therefore, of Phillips or Hardman, before the Walker lease was taken, to inquire of the plaintiffs respecting the kind of title claimed by them, and of the facts upon which it is based. Not having done so, Phillips had, in law, notice of all he would have learned from plaintiffs if he had made such inquiry. *Answer:* Affirmed. [8]

9. Notice to Hardman, who was Phillips' agent in taking his lease or the lease made to Walker, of the lease held by plaintiffs, was also notice to Phillips, though Phillips may have had no personal knowledge in relation thereto. And if any duty devolved upon Hardman to make inquiry as to the title of plaintiffs, it was also the duty of Phillips to make such inquiry. The knowledge of the agent is the knowledge of the principal, for the principal cannot derive a benefit from his agent's acts or knowledge and at the same time deny the obligations arising from the agent's conduct. *Answer:* Affirmed. [9]

10. The question of abandonment of the lease by plaintiffs does not depend exclusively on the length of time that opera-

tions had ceased, but also on the intentions of the parties, and that again is largely dependent on the agreement and understanding of Hartzell and the Farmers' Oil Company, Marks and McCandless and other lessees.   The case should be decided by the jury upon the evidence, and they should exclude, in the consideration of the case, all appeals to their prejudice.   Whether lessees generally should be permitted to hold a lease without carrying on operations is not in the case, and should not be considered by the jury.   *Answer :* Affirmed. [10]

Defendant's points and answers thereto among others were as follows :

2. The lease under which they claim title bound them to begin operations within thirty days from its date, and when operations were begun, to be continued with due diligence to completion or abandonment, or forfeit all their rights thereunder ; and if they ceased operations in October, 1888, and had never since resumed operations, this failure to operate was per se a forfeiture of all their rights under their lease, at the option of Hartzell, or any one claiming under him.   *Answer :* If the jury find that there were no contemporaneous understanding or agreement between Burton and Hartzell at the time of making of the lease, by which it was agreed that the drilling of one well was completion of the contract.   Affirmed. [11]

3. If the plaintiffs drilled one well in the fall of 1888, which was a failure, and thereupon drew the casing, removed the rig and all the other material from the lease, and never since entered upon the premises or resumed operations, this is per se an abandonment, and they cannot recover.   *Answer :* If this was done without intention of returning and operating.   Affirmed. [12]

6. The exception in the warranty in the deed of Hartzell to Zeigler in relation to plaintiffs' lease was notice to Phillips only of what the lease contained, and was not notice of any secret, private or unwritten agreement outside of the written lease. *Answer :* The declarations and conversations contemporaneous with the making of the lease do not alter or modify the written contract, but simply explain what was intended by the parties as " due diligence until completion or abandonment," and the language in the lease in this respect is indefinite and uncertain, and required explanation by the parties to determine, and Mr.

Phillips and Mr. Zeigler were bound to make inquiry of the lessees as to their understanding of the contract, and failing to do this they are visited with notice. [14]

Verdict and judgment for plaintiffs.   Defendant appealed.

*Errors assigned* among others were (19, 23–27) rulings on evidence, quoting the bill of exceptions; (4–12, 14) above instructions, quoting them.

*Clarence Walker* and *John M. Thompson*, with them *W. C. Thompson*, for appellants.—The court and not the jury construes written instruments, and it is error to submit them to the jury for their construction: Foster v. Berg, 104 Pa. 324.

A party to a contract should not be permitted to testify to an unexpressed intent, motive or belief: Cullmans v. Lindsay, 114 Pa. 166; Cake v. Bank, 116 Pa. 264; Spencer v. Colt, 89 Pa. 314; Thomas v. Loose, 114 Pa. 35; Juniata Building Association v. Hetzel, 103 Pa. 508.

*T. C. Campbell*, with him *Lev. McQuistion* and *W. A. Forquer*, for appellees.—Abandonment is a question of intention: Goodman v. Losey, 3 W. & S. 526; Spencer v. Colt, 89 Pa. 314; Thomas v. Loose, 114 Pa. 35.

Under the rule admitting parties to testify in their own behalf, where the character of the transaction depends on the intent of the party, it is competent for him to testify what his intention was.   His answer is, of course, not conclusive, but to be considered with other evidence: Juniata Bldg. Assn. v. Hetzel, 103 Pa. 511; Cullmans v. Lindsay, 114 Pa. 171; Cake v. Bank, 116 Pa. 270; Gardom v. Woodward, 21 Am. St. Rep. 314; Bartley v. Phillips, 165 Pa. 325; Phelps v. George's Creek Co., 60 Md. 536; Fire Ins. Co. v. Stone, 21 Fla. 555; Sedgwick v. Tucker, 90 Ind. 271; Snow v. Paine, 114 Mass. 520; Bank v. Koch, 105 N. Y. 630; Miner v. Phillips, 42 Ill. 123; Watkins v. Wallace, 19 Mich., 56; Wheelden v. Wilson, 44 Me. 11; Gardom v. Woodward, 44 Kansas, 758; Garrett v. Mannheimer, 24 Minn. 193; Vansickle v. Brown, 68 Mo. 627; Heap v. Parrish, 104 Ind. 36; McKown v. Hunter, 30 N. Y. 625.

A right to forfeit is an option: Wills v. Gas Co., 130 Pa. 222; Hyndman v. Hogsett, 111 Pa. 650; Thompson v. Christie, 138 Pa. 249.

A forfeiture is governed by equitable rules, and it will not be permitted, where it is not according to good conscience: Duffield v. Hue, 129 Pa. 94; Gas Co. v. DeWitt, 130 Pa. 235; James v. Emery Oil Co., 1 Penny. 242; Steiner v. Marks, 172 Pa. 400.

There being a duty to make inquiry, it is only satisfied by making inquiry of the parties to be affected. Inquiry made of the party whose interest lay in the forfeiture would be a farce: Metzgar v. Metzgar, 1 Rawle, 231; Lane v. Smith, 103 Pa. 415; Theyken v. Howe Co., 109 Pa. 95; Morgan's App., 126 Pa. 500; Leonard's App., 94 Pa. 168.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1897:

It was decided when this case was here before, 165 Pa. 325, that evidence to show the agreement between Hartzell and the plaintiffs as to what should constitute due diligence or abandonment, was admissible, not being an attempt to alter or modify the written agreement, but to define terms used therein. The effect of such an agreement as to parties subsequently acquiring title from Hartzell without notice, was not decided, as the evidence did not then show that any such party was before us. Now however the appellant has shown title subsequently acquired from Hartzell, and his main contention is that he was not put on inquiry, or bound by anything not contained in the written lease, and that the admission of evidence of a parol agreement between the parties to the lease would be as to him an alteration of the writing without notice.

This contention cannot be sustained. Appellant or his agent it is admitted had notice in fact of the lease. By it he was informed of an outstanding term in plaintiffs, for ten years, only three of which had expired. Whether the lease had terminated sooner by abandonment or forfeiture was a fact in pais which could not be known from the lease, but only from evidence dehors. As to such fact, he was put on inquiry, and the only safe source of information was the lessees. He not only did not inquire of them, but Hartzell's deed gave him notice that the lessor refused to say there was a forfeiture. Under these circumstances he took the risk whether there had been an abandonment or not, and the jury have found the fact against him. This court has firmly established in a line of decisions

from Wills v. Gas Co., 130 Pa. 222 to Cochran v. Pew, 159 Pa. 184, notwithstanding a most determined and persistent struggle of parties for a different rule, that the clause of forfeiture or termination of the estate is for the benefit of the lessor, and that as against him no act of the lessee can produce that result without his concurrence. Parties therefore who lease or buy, with a term apparently outstanding, without inquiry of the lessee and without the exercise of the lessor's power to forfeit, take the risk of the fact as it may be found by the jury. In this case as already said no inquiry was made of the lessees, the lessor in his deed to Ziegler refused to assert a forfeiture, and the jury have found that there was no ground of forfeiture if the lessor had attempted one.

The case of Venture Oil Co. v. Fretts, 152 Pa. 451, is relied upon by appellant, but there is nothing in it inconsistent with the present view. There the lessor after an apparent abandonment by the lessee had made a new lease to other parties, and this court held that to be an exercise of his right to forfeit for abandonment. In the present case as already said the lessor made a deed for the fee in the land, but excepted out of the warranty the rights of plaintiffs under the lease.

It is further assigned for error that the court below permitted the plaintiffs to deny the abandonment by testifying to their intentions in dealing with the property as they did. This question is somewhat novel, having only arisen in its present shape since the recent changes in the common law by which parties are made competent to testify. In Building Association v. Hetzell, 103 Pa. 507 it was said by Trunkey, J., " Under the rule admitting parties to testify in their own behalf, where the character of the transaction depends on the intent of the party, it is competent for him to testify what his intention was. His answer of course is not conclusive, but to be considered with other evidence," citing authorities from New York and Massachusetts. In Com. to use v. Julius, 173 Pa. 322, the plaintiff being met with a release was asked what induced her to sign it, and was permitted to testify as to her motive and inducement. This was held not to be error. The distinction was carefully guarded between that case and one of contract, where it is settled that one party may not testify to an intent not disclosed at the time, " the thoughts of one party cannot be proved to bind the

other." After reviewing the cases upon this last point, it is said, " This however is very different from testifying to the fact that false and fraudulent representations were the consideration or inducement to the party's action. This is one of the facts which is always part of the res gestæ, and which it was always competent for the party to prove. And now that the party is a witness, there is no sound reason why he should not prove it by his own testimony," referring further to the analogous cases of proving that a contemporaneous parol agreement was part of the consideration of a written contract, and a vendor's rescission of a sale for fraudulent representations which were the inducement to sell, in both of which the fact that the agreement or representation was the inducement may be proved by the party himself. So in Weaver v. Cone, 174 Pa. 104, an action for fraudulent misrepresentation by defendant of the price at which he had sold certain stock, in consequence of which plaintiff sold his at the price named, it was held that plaintiff was properly permitted to testify what induced him to sell. The point was made by appellant that whether the defendant's representation was the inducing cause of plaintiff's action was for the jury to determine from all the facts and circumstances, but that to permit plaintiff to state directly the secret motive which induced his action was giving him an unfair advantage, but this court held the testimony proper.

These cases seem to settle the present question in our state, and they are in accordance with the general trend of judicial decisions in states where statutes have made parties competent witnesses. In a note to Gardom v. Woodward, 44 Kan. 758, in 21 Am. State Reps. 310, authorities from Maine, New Hampshire, Massachusetts, New York, Maryland, Indiana, Iowa, Michigan, Minnesota, Wisconsin and California, are cited as holding such testimony admissible, and it is said that Ohio and Alabama are the only states in which a contrary view is taken.

In the present case there was no element of contract. The parties had no communication with each other, but acting independently on their several rights, the defendant relying on his own judgment from the appearance of abandonment, the plaintiffs on their intentions as well as their acts. We see nothing either in sound reason or in the authorities to limit their

general competency as witnesses to the latter.    If the jury was wrong in crediting their words rather than drawing a different inference from their acts, the remedy is not with us.

Judgment affirmed.