McKAY, Appellant, *v.* McDOUGALL Respondent.

(No. 1,276.)

(Submitted March 1, 1901.   Decided April 15, 1901.)

*Mining Claims — Location — Forfeiture — Evidence — In-
    structions—Relocation—Notice of Location—Amendment—
    Resumption of Work by First Locator.*

1.   Plaintiff based his title to a mining claim on a location made in 1877, and
     there was evidence that a third person had located the ground in 1876; but
     he testified that he never did any work thereon except "to represent the
     gulch," and there was no other evidence that he ever did any work after
     his location, while there was some evidence that work had been done on
     the ground in 1869, but that none was done thereafter until plaintiff located
     the claim.   The court instructed that, if such person located the claim at
     the time stated, plaintiff could acquire no title by his location, unless such
     person had abandoned the claim.   *Held* that this was misleading, since there
     might have been a forfeiture found by reason of such person's failure to
     represent the claim.
2.   Abandonment, as applied to mining claims held by location merely, takes
     place only when the locator voluntarily leaves his claim to be appropriated
     by the next comer, and regardless of what may become of it in the future.
3.   A forfeiture takes place by operation of law, without regard to the intention
     of the appropriator, whenever he,—having neglected to make the required
     annual expenditure upon the claim within the time allowed,—fails to pre-
     serve his right by resuming work thereon before a complete re-location by
     another.
4.   In the absence of a statute making additional requirements, or a local rule
     or custom, a compliance with the statutes of the United States (as to dis-
     covery and marking of the boundaries of mining claims) is sufficient.
5.   Whether the evidence shows a valid location is a question of fact for the
     jury,—and not a matter of law for the court to decide.
6.   Forfeiture is a question of fact for the jury upon the evidence to decide.

7. Where a mining claim on which plaintiff had located was relocated by defendant, but the notice filed by him was defective, and it was shown that, before it was properly remedied by an amended notice, plaintiff had performed work on the mine, it was error to instruct that on a suspension of work the right to resume was lost, where a qualified relocator enters and initiates a location, and a resumption of work between the initiatory and final acts of location is of no avail, since the acts required in the location of a claim are distinct, and all must be performed before a legal location exists.

8. Plaintiff located a mining claim on ground which a third person had located the year before. Subsequently defendant entered and filed a notice of location on the same claim, but owing to defects therein he afterwards filed an amended notice, and meanwhile plaintiff had resumed work. *Held,* that as there was a question as to whether the claim by the third person was a valid and subsisting one when plaintiff entered, in which case plaintiff's location was void and defendant's title was good, the amended notice filed by defendant was admissible in evidence.

*Appeal from District Court, Madison County; M. H. Parker, Judge.*

ACTION by Alexander McKay against William J. McDougall. From a judgment in favor of defendant, plaintiff appeals. Reversed.

*Mr. Lew L. Callaway,* for Appellant.

*Mr. W. A. Clark,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the Court.

Action by plaintiff for damages for alleged trespasses upon the Shoo Fly Gulch placer claim, situate in Madison county, for a perpetual injunction restraining defendant from further trespassing thereon, and for a decree quieting plaintiff's title. The defendant denies plaintiff's title, sets up a counterclaim alleging title in himself, and demands judgment for damages and for injunction.

The opinion rendered on a former appeal, reversing a judgment in favor of the defendant herein and remanding the cause, is reported in 19 Montana, at page 488, 48 Pac. 988. The pleadings having been amended to conform to the suggestions made by this Court in that opinion, a trial was had upon the

merits, resulting in a verdict for the defendant for $1,800.
Judgment was entered for this amount and for costs, and also
perpetually enjoining the plaintiff from asserting any claim
to the ground in controversy. From this judgment and an
order denying a motion for a new trial, plaintiff has appealed.

At the trial the plaintiff rested his claim of title upon a
location of the ground in controversy as the Shoo Fly Gulch
placer claim, made by himself and one Thurgood in July, 1877.
A notice or declaratory statement of this location was filed for
record with the clerk of Madison county on July 22. It was
signed by both locators, but was not verified. Plaintiff there-
after by *mesne* conveyances, acquired Thurgood's interest. The
defendant, denying any title in plaintiff, claimed title under
a location called the "Humbug Placer," made on July 22, 1893,
a notice of which was recorded on August 9, 1893, and an
amended location made on September 1, 1894. The three con-
tentions made at the trial were upon the questions whether the
ground in controversy was subject to location at the time plain-
tiff's location was made, whether the plaintiff had failed to
represent the Shoo Fly Gulch claim during the year 1892, and
whether the plaintiff resumed work before defendant located
the ground as the Humbug Placer, either by what he did on
the ground in 1893, or by his amended location made in 1894.
All these questions were fairly within the issues made by the
pleadings, as appears from a synopsis of them set out in the
statement preceding the opinion on the former appeal, and the
integrity of the judgment of the district court turns upon the
correctness of the instructions submitted to the jury upon these
issues.

1. Evidence was introduced tending to show that the ground
in controversy was located as a placer claim by one Sholes and
others in June, 1876. Sholes himself, who testified in the case,
stated that he saw the plaintiff upon the ground early in 1877,
but that as his time had not expired he was not uneasy. In
another place in his testimony he says that while he and his
associates worked in the neighboring gulches until 1880, when

he sold out, they never did any work upon the ground claimed by plaintiff in the way of mining, except "to represent the gulch." From other evidence in the case it appeared that there was not water enough in the gulch for mining purposes, and that all the work done there subsequently was by means of water brought in from other sources. There was also some evidence from which it might be inferred that work had been done upon the ground in 1869, but that none had been done thereafter until plaintiff made his location. There is no other evidence in the record that Sholes and his associates did any work upon the claim at any time after the date of their location. Upon this evidence the court, after stating correctly to the jury the steps necessary to make a valid location of a placer claim in 1876, instructed them as follows: "And if you find from the evidence that the said Clark M. Sholes and his associates in June, 1876, did make a discovery of placer gold on the unoccupied lands of the United States, and on the premises in controversy, and did make a location thereof, and mark the boundaries thereof so that they could be readily traced, then the court instructs you that as a matter of law the said Sholes and his associates were the owners of and entitled to the possession of said claim against all the world, and were in law in possession thereof, so long as they complied with the laws of the United States; and any location placed thereon or attempted to be put upon said premises by the plaintiff while such prior location was valid and subsisting was a nullity and conferred no rights upon plaintiff, and he would be a trespasser, under the law, unless you further believe from the evidence that the said Clark M. Sholes and his associates abandoned said placer claim and left the same without any intention of returning thereto prior to July, 1877, when the plaintiff, McKay, claims to have made his location thereof." Upon the facts in evidence before the jury upon this branch of the case, this instruction was clearly misleading. For, while failure to represent a mining claim, with other facts showing intention, may leave room for an inference of abandonment by the locator,

there may be a forfeiture of all right by the mere failure where the intention to abandon does not exist. Abandonment, as applied to mining claims held by location merely, takes place only when the locator voluntarily leaves his claim to be appropriated by the next comer, without any intention to retake or claim it again, and regardless of what may become of it in the future. A forfeiture takes place by operation of law, without regard to the intention of the appropriator, whenever he neglects to preserve his right by complying with the conditions imposed by law; that is, to make the required annual expenditure upon the claim within the time allowed. The former involves an inquiry of fact as to the intention as well as the act; in regard to the latter the inquiry is: Has the required expenditure been made as the law commands? We are of the opinion that while there is, perhaps, sufficient evidence upon which to base an inference that Sholes and his associates had abandoned their claim at the time plaintiff's location was made, the question whether they had forfeited their rights by failure to represent the claim before that time was also fairly presented, and should have been submitted to the jury under proper instructions. The paragraph quoted is correct upon the question of abandonment, this term being clearly defined in a following paragraph; but it should have gone further, and submitted, also, the question of forfeiture. The logical effect of it is to exclude this question from the consideration of the jury altogether. In this connection the court should also have laid down the correct rule as to the time within which Sholes and his associates were obliged to do their annual representation work in order to save a forfeiture. Under the act of congress of May 10, 1872 (17 Stat. at Large, 92, Sec. 5), the year within which the required expenditure must be made upon all claims theretofore or thereafter located was computed from the date of the respective locations. As to claims located prior to the passage of that act the rule was changed by acts of congress of March 1, 1873, and June 6, 1874, respectively (17 Stat. at Large, 483; 18 Stat. at Large, 61), so that after January 1,

1875, the year was computed from the 1st day of January in each year. As to claims located after May 10, 1872, the rule remained as provided in the act of that date until the act of congress of January 22, 1880 (21 Stat. at Large, 61), which so amended the act of May 10, 1872, as to permit the time of representation to be computed from the 1st day of January "succeeding the date of location," and the provision was made applicable to all claims, whether located before or after the amending act. (Lindley on Mines, Sec. 621; *Hall* v. *Hale*, 8 Colo. 351, 8 Pac. 580; *Belk* v. *Meagher*, 104 U. S. 279, 26 L. Ed. 735.) The court having already, in another paragraph of the instructions, laid down the rule correctly as to when the representation should have been done by the plaintiff in order to prevent a forfeiture in 1892, the jury, in the absence of the specific instruction as to the rule applicable in 1876-77, were doubtless led to infer that the same rule applied in both cases. Under this view the jury might well conclude that the location made by plaintiff in July, 1877, was void from the beginning, because it was made on land still subject to the claim of Sholes and his associates, whereas, from the evidence, and under a proper instruction, they might have reached the conclusion that the Sholes location was forfeited for want of representation prior to the end of June, 1877.

In what we have just said with reference to the Sholes location we have proceeded upon the assumption that there was evidence enough to go to the jury upon the question whether the acts done upon the ground by Sholes and his associates in June, 1876, made it a valid location. At that time the statute of the territory of Montana requiring a record of a verified notice or declaratory statement of location did not include placer claims. It applied only to lode locations until the passage of the act of March 5, 1883 (Session Laws 1883, p. 95), which was amendatory of the Revised Statutes of 1879, and made all locations subject to the same rule. In the absence of a statute making additional requirements, or a local rule or custom (and none was proven in this case), a compliance with the statutes

of the United States as to discovery and marking of the boundaries was sufficient. It was for the jury to say whether the evidence showed such a compliance, though the monuments put upon the ground to indicate the exterior boundaries were few and placed at great intervals. The court could not say, as a matter of law, that the facts did not show a valid location.

2. It was also a question for the jury, upon the evidence, whether the plaintiff had suffered a forfeiture of his rights by a failure to represent his claim in 1892, as well as whether he had resumed work in good faith before the Humbug Placer was located. The plaintiff contends that it is shown by uncontradicted evidence that he did several hundred dollars worth of work on his claim in 1892. He also asserts that, if it be conceded that he did no work at all during that year, yet there is no controversy but that the evidence shows that he resumed work in good faith before the defendant made any location. As to work done in 1892 plaintiff's position is sustained by his own testimony; on the other hand, the testimony of the defendant tends to show that plaintiff did no work at all, but that the excavation and removal of dirt from the gulch, which plaintiff claims to have done by the use of water from a ditch passing round the head of the gulch to other claims, was done by waste water from this ditch or by a cloudburst long before 1892, and that plaintiff had nothing whatever to do with it. There was thus a direct and substantial conflict in their statements. There is, however, no substantial conflict in the evidence introduced by the plaintiff to show that he did a large amount of work upon the claim in 1893, after the defendant entered thereon, and during 1894, prior to September 1st. Indeed, a considerable portion of the judgment recovered by the defendant was for gold taken out by the plaintiff between July 22, 1893, and September 1, 1894, the date of defendant's amended location. The facts connected with defendant's location are that he entered upon the land in July, 1893. Having found gold, he marked the boundaries of his claim running up the gulch with monuments, which the jury evidently found

sufficient to identify the claim. Thereupon he filed his notice for record with the county clerk, but it was not verified as required by the statute, and was defective in other particulars. After this suit was begun by plaintiff, and after plaintiff had commenced to "work the mine thoroughly," as he says, the defendant filed his amended notice of location. This amended notice was sufficient in substance, and would, in the absence of any other rights, establish defendant's title to the Humbug Placer. The question, therefore, is: Did plaintiff's resumption of work, and its continuance thereafter, prevent a forfeiture in favor of the defendant's location initiated before a resumption of work, but not completed until some fourteen months after? The trial court was of the opinion that it did not, as appears from the following instruction submitted to the jury upon this branch of the case: "The court instructs the jury that, in order to prevent a forfeiture for failure to perform assessment work required by law, the claimant must resume in good faith, and prosecute the same continuously and without unreasonable interruption until the full amount of labor is performed. Nothing less than the outward manifestation of intent to atone for the delinquency by diligent continuous prosecution of substantial and valuable development work will satisfy the law; that, while the claim will be protected from relocation so long as the claimant is actually engaged in making up the deficiencies, a suspension of work for any appreciable period before the full amount required has been performed will subject the claim to relocation, and the right to resume work is lost, where a qualified relocator enters and initiates a location, and a resumption of work upon a claim between the initiatory and final acts of relocation is of no avail. And if you believe from the evidence in this case that the plaintiff had failed to represent said placer claim for the year 1892, and that the defendant entered upon said premises and proceeded to initiate a relocation thereof prior to the plaintiff commencing work, then any work done by the plaintiff after the initiation of said relocation will not avail him or save his rights in the premises,

and you must find for the defendant." This paragraph, except the last sentence, is taken from the text of Mr. Lindley, on pages 825, 826. While we agree that it states the law correctly as to good faith and diligence in the prosecution of the work after resumption, we dissent from this learned author's view that work may not be resumed after the entry of the relocator and the initiation of the second location, so as to save the forfeiture. Whatever may be the rule in other jurisdictions, under local statutes requiring work of considerable amount to be done by the relocator in order to complete his relocation, which is also the case under our present statute (Political Code, Sec. 3615), the rule applicable under the statute in force in this state until July 1, 1895 (Compiled Statutes of 1887, Fifth Division, Sec. 1477), is stated in *Gonu* v. *Russell,* 3 Montana, 358, as follows: "The law contemplates that the location of a mining claim shall consist of a number of distinct acts, which are independent of each other. The last that may be done does not relate back to the first, and all must be performed before a legal location exists. The owner of the lode which has become subject to relocation can resume work thereon at any time prior to the performance of all these acts. The appellant could not make a valid location of the Empire lode until he had marked the boundaries so that they could be traced readily by means of stakes, monuments, natural objects, or any other certain means. The resumption of labor in good faith by the respondent before the appellant perfected his location rendered null the prior acts of the appellant." The rule as thus stated necessarily results from the signification given to the term "location" used in the statute (Rev. St. U. S. Sec. 2324). The territorial supreme court understood it in its broadest sense, comprehending all the several steps necessary to make a complete location. Under the rule adopted by other courts, and as stated by Mr. Lindley *supra,* the term is held to mean the initiation of a location by entry and performance of the first necessary step. While there is much to be said in favor of this latter view, the argument is not so overwhelming that we feel justified in departing from the rule as laid down in *Gonu* v. *Russell.*

In the first paragraph of this opinion we spoke generally of a forfeiture as the result of a default on the part of the first locator. Speaking accurately, it is only by a complete relocation by another after default of the first locator that a forfeiture is wrought. This statement is fully in accord with Mr. Lindley's view in his text, at page 820, and it is the only logical view. It will not be contended that if A., for example, enters upon a claim located by B., which is subject to forfeiture, with the intention to relocate it, and takes one or more of the necessary steps to that end, but abandon's his purpose before he completes the relocation, B.'s rights will be thus effectually forfeited. If congress had intended this, the idea would doubtless have been expressed by use of some other term less comprehensive in meaning than the term "location." The rule as stated in *Gonu* v. *Russell* is therefore logical and sound. In any event, we do not feel disposed to reject it, especially in view of the fact that it has so long stood as the rule in this jurisdiction, and impliedly at least has twice been approved by this Court. (*Honaker* v. *Martin,* 11 Mont. 91, 27 Pac. 397; *Hirschler* v. *McKendricks,* 16 Mont. 211, 40 Pac. 290.)

The location of the defendant, which was not completed until September 1, 1894, did not cut off the right of plaintiff to resume work at any time prior to that date, provided his location was valid in the first instance and had not been abandoned, and provided, also, that under the rule in *Honaker* v. *Martin* and *Hirscler* v. *McKendricks* he diligently prosecuted the work without unreasonable interruption until the full amount was performed. Of course, if upon another trial it should appear that the plaintiff abandoned his location at any time before July, 1893, he would have no right to the ground whatever.

3. Plaintiff contends that the trial court erred in overruling his objection to the introduction in evidence of a copy of defendant's amended notice of location. Upon the theory that the Sholes location was a valid, subsisting one at the time plaintiff entered and made his location, the latter was void *ab initio*

and imparted no title. In that case defendant's title would be good. His record of September 1, 1894, cured all defects in the original notice, and made the location valid except as to intervening rights.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*