**HALL et al. v. McCLESKY. (No. 9431.)**

(Court of Civil Appeals of Texas. Fort Worth. Jan. 22, 1921. Rehearing Denied Feb. 26, 1921.)

1. **Mines and minerals** �köö77—**Lessee's rights may be lost by abandonment, which is a question of intention, established by circumstantial evidence.**

Rights of lessee under an oil and gas lease may be lost by abandonment, and abandonment is a question of intention, which may be established by circumstantial evidence, such as the removal of machinery, quitting the premises, and other circumstances showing an intention to relinquish all rights and interests in the leased premises.

2. **Mines and minerals** ⊚ⴰ78(1)—**Lessee held under no obligation to commence another oil well 60 days after "completion" of first.**

Where an oil and gas lease was made in consideration of lessee within 270 days completing a well within one mile of lessor's tract, and provided for commencement of a well on lessor's tract within 60 days after completion of the first well, which was to be drilled to a depth of 2,000 feet, lessee agreeing to pay rent for delay in drilling the well on lessor's premises, held, that lessee, having drilled the first well to the requisite depth before expiration of the time for its completion, was under no obligation to begin another within 60 days after such completion; a completed well meaning finished or sunk to the depth necessary to find oil, or to such a depth as, in the absence of oil, precludes a probability of finding it at a further depth.

3. **Mines and minerals** ⊚ⴰ77—**Evidence insufficient to show abandonment by lessee.**

In a suit by a landowner to cancel an oil and gas lease on the ground of abandonment, evidence held insufficient to show abandonment by lessee.

4. **Mines and minerals** ⊚ⴰ77—**Burden of showing abandonment in suit to cancel lease held on lessor.**

In a lessor's suit to cancel an oil and gas lease on the ground of abandonment, the burden of showing abandonment was on plaintiff.

5. **Mines and minerals** ⊚ⴰ77—**To establish abandonment of lease, both intention and act must be shown.**

To establish abandonment of lease on the part of the lessee, both an intention and the act must be shown.

---

**6. Mines and minerals ☞77—Cessation of work and nonuser admissible to show abandonment of lease.**

In a suit to cancel an oil and gas lease on the ground of abandonment by the lessee, cessation of work and nonuser is admissible.

**7. Appeal and error ☞1001(1)—Verdict and judgment of abandonment of gas lease subject to review by appellate court.**

While, in a suit to cancel an oil and gas lease on the ground of abandonment, abandonment is a question for the jury, yet in its determination a verdict and judgment is subject to review by the appellate court, and the judgment may be reversed for insufficiency of evidence.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by E. A. McClesky against E. W. Hall and another. Decree for plaintiff, and defendants appeal. Reversed and remanded.

Fitzgerald & Hatchitt, of Wichita Falls, for appellants.

Weeks, Morrow, Francis & King, of Wichita Falls, for appellee.

BUCK, J. This suit was instituted, on February 1, 1919, by E. A. McClesky, as plaintiff, against E. W. Hall and the Eleven Sands Oil & Gas Company, to cancel an oil and gas lease executed by plaintiff to defendant Hall, as trustee, on October 23, 1917, and the removal of the cloud cast thereby upon the title to 200 acres of land covered by the lease. The basis for this relief was that plaintiff and three others had executed community leases to Hall, by the terms of which the lessee was to drill a well to a depth of 2,000 feet, unless oil or gas was found in paying quantities at a lesser depth, upon some one of the four tracts, and within a mile of each of them, and after the completion of said well a well was to be started upon each tract within 60 days from the completion of the first well, or a rental was to be paid for the delay; that said first well, under the terms of the original lease, was to be begun within 90 days from the date of the same to wit, October 23, 1917, and that subsequently, to wit, on March 26, 1918, a written extension of said lease was executed by plaintiff, whereby the time for beginning a well was extended to April 23, 1918, but without changing the other provisions of the original lease; that the first well was drilled and completed on or about August 11, 1918, and thereafter the defendants did nothing toward carrying out the obligations of said lease, but abandoned same.

By their first amended original answer, the defendants, after admitting the execution of the lease and the extension thereof as pleaded by plaintiff, alleged that they had 270 days from April 23, 1918, to complete the first well, and then by the terms of the extension contract they had 60 days more in which to begin a well on plaintiff's land, and, that before the expiration of said 60 days they had tendered the rentals to plaintiff, but that he had failed and refused to accept the same; and the defendants pleaded that they tendered the rentals due plaintiff under and by virtue of said original lease into court. The plaintiff, by supplemental petition, denied that the defendants had 60 days in which to begin a well on his land, after the 270 days stipulated in the original contract as a maximum time for completing the first well, but alleged that the first well was completed August 11, 1918, and that the defendants had, under their contract, only 60 days from the date of completion of the well.

The cause was tried before a jury, and the court, after giving a definition of the term "abandonment," as used in his charge, submitted only one issue of fact, to wit:

"Bearing in mind the definition of the term 'abandonment' as hereinbefore given you, find whether or not the defendants abandoned the lease in controversy at any time before the filing of this suit."

The jury answered this issue in the affirmative. The court entered a judgment for plaintiff upon this verdict, and the defendants have appealed.

[1] The lease by plaintiff to the defendants contains no forfeiture clause, and plaintiff relies entirely on the sufficiency of the proof to show abandonment by defendants of the land covered by the lease. That the rights of the lessee may be lost by abandonment is evident. This is practically the same thing as a breach of the implied covenant on the part of the lessee to use diligence in sinking a well. Abandonment is a question of intention, but this intention may be established by circumstantial evidence, such as the removal of machinery, quitting the premises, and other circumstances showing an intention to relinquish all rights and interest in the leased premises. Oil & Gas Rights, Morrison-De Soto, p. 110; Calhoon v. Neely, 201 Pa. 97, 50 Atl. 967. When the unsuccessful search for oil is abandoned, the inchoate title of the explorer for mineral is lost. Garrett v. South Penn Oil Co., 66 W. Va. 587, 66 S. E. 741; Eastern Oil Co. v. Coulehan, 65 W. Va. 531, 64 S. E. 836. Long delay is proof of abandonment, which will justify cancellation of the lease. Chandler v. French, 73 W. Va. 658, 81 S. E. 825, L. R. A. 1915B, 561; Acme Oil, etc., Co. v. Williams, 140 Cal. 681, 74 Pac. 296. The presence of a forfeiture clause is not necessary to allow of this result. Smith v. Root, 66 W. Va. 633, 66 S. E. 1005, 30 L. R. A. (N. S.) 176. Except in the case of a perfect legal title to a corporeal hereditament, every right or interest in, title to, or ownership of property may be lost by

abandonment. This rule applies to mining rights and privileges. Aye v. Philadephia Co., 193 Pa. 451, 44 Atl. 555, 74 Am. St. Rep. 696; Wilmore Coal Co. v. Brown (C. C.) 147 Fed. 931, 943, affirmed in Brown v. Wilmore Coal Co., 153 Fed. 143, 92 C. C. A. 295; Derry v. Ross, 5 Colo. 295. An unexplained cessation of work would be sufficient proof of abandonment. Strange v. Hicks, 78 Okl. 1, 188 Pac. 347. The question of abandonment is one of fact for the jury. Bartley v. Phillips, 179 Pa. 175, 36 Atl. 217. But on the issue of abandonment a party may swear to his intentions in explanation of his acts. Bartley v. Phillips, supra.

The original lease between McClesky and Hall, of October 23, 1917, provided:

"This lease is made in connection with other leases, and part of the consideration is that a well is to be drilled within one mile from this tract, said drilling to be started within ninety (90) days, and the time of two hundred and seventy (270) days is given for completion, and after completion a well must be started on this tract within sixty (60) days, said first well to be drilled to a depth of two thousand (2,000) feet, unless oil or gas should be found at a lesser depth.

"The lessee agrees to begin operations for the drilling of a well upon the above-described premises * * * or thereafter pay to the lessor the sum of $4 per acre, per annum, payable quarterly in advance, until a well is commenced, or until the end of the three years hereof, as a rental and complete remuneration to lessors for delay. When a well is once begun, drilling thereof shall be prosecuted with due diligence until same is completed."

The extension agreement, dated March 26, 1918, provides that:

"I, E. A. McClesky, for and in consideration of the premises as hereinbefore set out, do hereby extend the time for beginning the drilling of a well on the hereinbefore described tract of land or an adjoining tract or tract within one mile of the said hereinbefore described land to April 23, 1918, and in the event that drilling has not started on said well by April 23, 1918, this lease to become null and void and agree that the time for the completion of said well shall be 270 (two hundred seventy) days from the beginning thereof. It is understood that no other terms or conditions of said original lease is in any manner changed by this extension."

[2] The 270 days from April 23, 1918, did carry the further completion of the well to January 18, 1919; but the well was completed in August of 1918, either on August 11, as testified to by plaintiff, or on August 17, as testified to by Mr. Blair, the president of the Eleven Sands Oil Company. This time of 270 days granted lessee for the completion of the well was for his benefit, and we are of the opinion that no more time was allowable under this provision than was necessary to complete the well. But we do hold that, a well to a depth of 2,000 feet having been drilled on plaintiff's land, the lessor was under no obligation to begin another well on his land within 60 days after such completion, and that lessee had complied with his obligations to the lessor in drilling the well to 2,007 feet on his land, and that he owed the lessor no rental for the 3-year term. A completed well means finished or sunk to the depth necessary to find the oil, or to such a depth as, in the absence of oil, precludes the probability of finding it at a further depth. Morrison-De Soto, p. 83; Frost v. Martin, 203 S. W. 72. The appellant showed that the well drilled on the plaintiff's land cost him $33,000.

We will then consider only whether the evidence is sufficient to show an abandonment by the lessee of the lease. Appellant's third assignment is that the judgment should be reversed and the cause remanded, because the finding of the jury on the question of abandonment is contrary to the preponderance and great weight of the testimony. In the case of Fisher v. Crescent Oil Co., 178 S. W. 905, the court says:

"A vested title cannot ordinarily be lost by abandonment unless there is satisfactory proof of an intention to abandon. Of course, if no oil had been found, as required by the conditions of the contract, the title would have been inchoate, and when unsuccessful search was abandoned the right ended; but the discovery of the oil on the land vested a right to continue the search elsewhere and to operate for 25 years, and the mere fact that the oil was exhausted in one well, and not found in the other, did not divest the right already vested. It therefore became necessary in this case for the appellant to show an intention upon the part of appellee to abandon the lease."

F. B. Blair testified that he was the president of the Eleven Sands Oil Company, and that said company was incorporated in Missouri on February 12, 1918; that prior to that time it carried on no business in Texas, except to develop its holdings; that in October, 1917, the leases on the four tracts, aggregating 600 acres and located near Iowa Park, were secured by E. W. Hall; that Hall wired him, asking if he could raise the money to develop the land for oil and gas; and that he wired back that he could; that Hall then came to Kansas City, and that some two weeks later they went in together, and that the title to the leases was left in Hall as trustee for the Eleven Sands Oil Company; that they erected a derrick on McClesky's land in 1918, and drilled to 2,007 feet some time in August, 1918; that the Eleven Sands Oil Company got into financial straits, and that a Mr. Delaney, who was drilling the well, attached the property of the company on the McClesky land for debt; that subsequently Delaney was made trustee, and sold all of the personal property, including the casing, which was withdrawn from the Mc-

Clesky well; that he tried to get Delaney to bore the well deeper, but the latter refused; that he used his efforts to see that the property was sold for a good price, and to pay all of the debts owing by the Eleven Sands Oil Company; that he did pay such debts and got in shape to fulfill the lease contract with plaintiff and his associates; that subsequent to the abandonment of the McClesky hole the Eleven Sands Oil Company did nothing toward developing McClesky's land, though the stockholders voted to raise the capital stock and start another well on his land, but that the money was not raised; that they had employed a lease man, D. T. Mote, who boarded at Iowa Park and was on the leased premises almost daily; the oil company had a contract with a geologist, an expert oil man, to come to Iowa Park and put his instrument over the hole, but that before he came the plaintiff filed his suit; that the instrument used by the geologist enabled him to tell whether there was oil in the hole or not; that during December, 1918, the company decided that they would not drill that year; that the hole was filled up during September, 1918, though it was done without his knowledge and over his protest; that Mr. Mote told him that the law required that the hole be filled up. He further testified that the Eleven Sands Oil Company had kept Mr. Mote on the leases, at a salary of $50 a week up to the time of the trial; that he did not tender Mr. McClesky any rentals, because he considered the drilling of the well on the latter's premises was in lieu of rentals, and that he did not consider that he owed the lessor any rentals; that he had never abandoned the leases near Iowa Park, of which the lease in question was one; that at the time this suit was filed the land covered by the lease was worth on the market $200 an acre, and that they had a standing offer of that amount on the McClesky lease; that when they finished the well on this land the lease was worth more than at the time they began it.

E. W. Hall testified that he was trustee, vice president, and a director of the Eleven Sands Oil Company; that to his knowledge never a word had been spoken by any member of the Eleven Sands Oil Company indicating a purpose to abandon the lease; that it intended now to develop this lease; that it had actually done nothing towards drilling on this land since the well was completed in August, 1918; that all the time it had been the intention of the Eleven Sands Oil Company to drill for oil on the land, though he did not see it do anything towards drilling during October, November, or December, 1918.

Plaintiff testified that the Zink well came in the latter part of November or the first part of December, 1918, and that in December he demanded of the Eleven Sands Oil Company a surrender of his land; this was after the Zink well came in, about a mile and a quarter from his land; that on February 1, 1919, he filed this suit.

[3, 4] We are of the opinion that the evidence fails to sustain the issue of abandonment. The evidence shows that defendants tendered to the other lessors, in the community lease, the rental for 1918; that, after the casing (costing $14,000) and other personal property of the lessees on the land had been sold, the Zink well near by came in and greatly enhanced the value of this lease, and that they recognized its great value; but the company had expended its available funds, and was not able to drill further at that time, without either increasing their stock, which it seems they were unable to do, or did not do, or by selling some of their leases, and thus raising the money necessary for further drilling. The burden of proving abandonment was upon plaintiff, and we do not think he has discharged this burden. Buffalo Zinc & Copper Co. v. Crump, 70 Ark. 525, 69 S. W. 572, 91 Am. St. Rep. 87; McKay v. McDougall, 25 Mont. 258, 64 Pac. 669, 87 Am. St. Rep. 405, 416; Ahrns v. Gas Co., 188 Pa. 249, 41 Atl. 739.

[5-7] Abandonment consists of two parts, the intention and the act. 1 Corpus Juris, 7. There must be an absence of animus revertendi in order to constitute abandonment. The burden is upon him who relies on the abandonment to establish it by clear, unequivocal, and decisive evidence. 1 Corpus Juris, 7; 1 R. C. L. p. 7. Cessation of work and nonuser is admissible to prove abandonment, and when continuing for a long time and unexplained may be sufficient to establish the fact; but in the present case we think the evidence fails to show a length of time which alone would justify a conclusion of abandonment, and that the defendants have in their testimony given a reasonable explanation of the temporary cessation of the work. While we recognize the fact that abandonment is a question for the jury, yet in its determination a verdict and judgment of the trial court is subject to review by an appellate court, and the judgment may be reversed for insufficiency of evidence to establish that issue. M. P. Ry. Co. v. Somers, 78 Tex. 439, 14 S. W. 779; Dimmitt v. Robbins, 74 Tex. 441, 12 S. W. 94; Ry. Co. v. Dillard, 70 Tex. 62, 8 S. W. 113.

For the reasons given, the judgment is reversed, and the cause remanded.