his opinion refusing a new trial, that we do not think it necessary to elaborate it. A careful examination of the record does not disclose error.

Judgment affirmed.

## McKean and Elk Land and Imp. Company, Appellant, *v.* Kane et al.

Argued May 5, 1892. Appeal, No. 463, Jan. T., 1892, by plaintiff, from judgment of C. P. Elk Co., Feb. T., 1887, No. 232, on verdict for defendants, Elizabeth D. Kane et al. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Ejectment.

PER CURIAM, May 23, 1892:

This case involves the same question as McKean and Elk Land and Improvement Co. v. Clay, just decided. There was undisputed evidence in this case, as well as in the one referred to, that the plaintiff had notice some ten or eleven years prior to the commencement of this action of the purchase by Kane of the land in question. The learned judge, therefore, properly held that the plaintiff's claim was barred by the act of 1856.

Judgment affirmed.

See preceding case.

## Heintz et al. *v.* Shortt et al., Appellants.

*Oil lease—Construction of—Forfeiture—Failure to operate.*

An oil lease provided that the lessee should complete the first well within six months, " or thereafter within sixty days remove all machinery and buildings for the business erected and used and this lease be declared null and void unless further prosecuted after the first well drilled." The first well was completed within the six months and oil obtained ; but thereafter for some four years nothing was done towards the drilling of any other well. *Held,* that the lease had become void.

Argued May 5, 1892. Appeal, No. 442, Jan. T., 1892, by defendants, Alfred Shortt et al., from judgment of C. P. Warren Co., March T., 1891, No. 52, on verdict for plaintiffs, Geo.

M. Heintz et al. Before Paxson, C. J., Sterrett, Green, McCollum and Mitchell, JJ.

Ejectment.

On the trial before Mehard, P. J., it appeared that defendants claimed title under an oil lease of which plaintiffs had notice when they purchased. If oil was found within six months from its date, the lease was to "continue in force so long as oil shall be found, whether for fifteen years, more or less." The date of the lease was January 30, 1886. The consideration was $50.00, and one eighth of the oil produced. The first well was completed within six months from the execution of the lease and oil obtained. It was admitted that nothing was done toward the drilling of any well subsequent to the first.

Plaintiffs' point, affirmed, was : " That under all the evidence the verdict should be for the plaintiffs."

Defendants' 4th point, refused, was : " Under all the evidence in the case the verdict should be for the defendant."

The court directed a verdict for the plaintiffs for the land described in the writ, together with six cents damages and costs ; which verdict was rendered by the jury and judgment entered thereon.

The other material facts appear in the following portion of the charge of the court :

[" I will again read the paragraph in the lease wherein those words occur: ' The party of the second part covenant to commence operations for said mining purposes so as to complete the first well within six months from the execution of this lease, or thereafter within sixty days remove all machinery and buildings for the business erected and used and this lease be declared null and void unless further prosecuted after the first well drilled.' Unless what was further prosecuted? It does not mean, we think, unless the first well was further prosecuted, nor is it probable that it meant unless the lease was further prosecuted, but that which they were to commence and operate were operations for said mining purposes.

"And, therefore, we would read this clause or paragraph, that the party of the second part covenant to commence operations for said mining purposes so as to complete the first well

within six months from the execution of this lease, or thereafter within sixty days remove all machinery and buildings for the business erected and used, and this lease be declared null and void unless operations for said mining purposes be further prosecuted after the first well drilled.

" Understanding that, then, to be the meaning of this lease, and it being a conceded fact that there were no operations for mining purposes prosecuted upon that land after the first well was drilled, in the opinion of the court, the lease was null and void.] [3]

[" We would say to you, however, that there is a question as to within what time the defendants or the lessee, Harrison Wade, and those claiming under him, were to prosecute these operations for mining purposes?   And that would be within a reasonable time.   If the time which elapsed between the time of the making of the lease and the completing of the first well were not so long a time as it has been, it might be a question for the jury to say whether a reasonable time has elapsed.

" But, in view of the nature of oil, in view of the extent of territory that is herein embraced, and in view of the fact that that time is from the summer of 1886, up until the present time, or up until the time when suit was brought, about a year ago, there is not room, we think, for a question as to the fact that more than a reasonable time has elapsed, and, therefore, we say that in view of the undisputed facts in this case, and upon the construction we give to this clause in the lease, the lease is null and void, and therefore the defence fails.   That being true, it is our duty to say to you further, that your verdict must be in favor of the plaintiffs for the land described in the writ, together with six cents damages and costs."] [4]

*Errors assigned* were (1) affirming plaintiffs' point; (2) refusing defendants' fourth point; (3, 4) the portions of the charge as above in brackets ; quoting points and charge.

*D. I. Ball* of *Ball & Thompson*, with him *Allen, Higgins & Allen*, for appellants.—The provision in the lease for its forfeiture means that if the first well be completed within the six months and no oil be found, the lease becomes forfeited unless it is " further prosecuted after the first well drilled."

*Watson D. Hinckley* and *William E. Rice*, not heard, for appellees.

PER CURIAM, May 23, 1892:
Judgment affirmed.

## Brasington et al., Appellants, *v.* Hanson et al.

*Tenancy in common—Creation of— " Heirs "—Deed.*

A deed to a grantee and her heirs for the use of the grantee and her heirs, enumerating as her heirs four of her children by name, creates a tenancy in common in the grantee and the four children with an immediate right of possession in all.

Argued May 5, 1892. Appeal, No. 462, Jan. T., 1892, by plaintiffs, Oscar Brasington et al., from judgment of C. P. Warren Co., Sept. T., 1886, No. 34, on verdict for defendants, John P. Hanson et al. Before PAXSON, C. J., STERRETT, GREEN, MCCOLLUM and MITCHELL, JJ.

Ejectment.

At the trial before BROWN, P. J., it appeared that in 1842 the premises in question were conveyed by a deed in which Archibald Tanner was named as party of the first part and Sally Brasington as party of the second part. The grant was to " the said party of the second part, her heirs," the words " and assigns " immediately following " heirs " being stricken out both here and in the habendum and warranty. Immediately after the description were the words " for the only use and behoof of the said Sally Brasington and her heirs, viz. : Samuel, Milton, Oscar and Albert H. Brasington." The habendum was " to have and to hold the premises hereby granted with the appurtenances unto the said party of the second part, her heirs to the use of the said party of the second part her heirs forever ; " the warranty was " to the said party of the second part, her heirs. " Sally Brasington died in 1884. Samuel, Milton, Oscar and Albert H. Brasington were four of her fourteen children. The plaintiffs were Oscar and Albert H. Brasington and their grantees, and the heirs of Milton Brasington and their grantees.

Defendants claimed under a deed from Sally Brasington to Brown, dated April 17, 1855, stated therein to be made " to de-