| 70 | 525 |
| 72 | 226 |
| 72 | 329 |

| 70 | 525 |
| 76 | 10 |
| e77 | 205 |

| 70 | 525 |
| 90 | 76 |

BUFFALO ZINC & COPPER COMPANY *v.* CRUMP.

Opinion delivered June 28, 1902.

1. MINING CLAIMS—LOCATION.—Lands valuable for ores found in lodes are not subject to locations of placer mining claims.    (Page 531.)

2. FOREIGN CORPORATION—RIGHT TO MAINTAIN ACTION.—Under the act of February 16, 1899, which provides that every foreign corporation, before it shall be authorized to do business in this state, must file a certificate designating an agent upon whom service of process may be had, and that any corporation which shall fail to comply with the act shall not maintain any suit or action, a foreign corporation which complied with the act after it had commenced an action was entitled thereafter to maintain its action.    (Page 534.)

3. SAME—DOING BUSINESS IN STATE.—The institution and prosecution of an action is not "doing business" within the meaning of the act of February 16, 1899, and of other statutes upon the same subject.    (Page 535.)

4. VEIN AND LODE DEFINED.—The terms "vein" and "lode," as used in the mining acts of congress, are applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock.    (Page 535.)

5. MINING CLAIM—SUFFICIENCY OF DESCRIPTION.—Where a notice of location of a mining claim describes it as "beginning at the nw. corner of Ed Williams' 1-16, at a black oak post; thence 1,500 feet north, between secs. 10 and 11, to a dogwood bush; thence 600 feet E. to a dogwood bush; thence 1,500 feet south to oak post in Williams' field; thence 600 feet to place of beginning; this being in the northwest quarter of the southwest quarter sec. 11, t. 17, range 15 w.," it will be presumed that the point designated as the place of beginning is a well known natural object until the contrary is shown.    (Page 536.)

6. SAME—PRESUMPTION AS TO REGULARITY OF LOCATION.—Where appellant purchased certain mining claims, and has been in possession, controlling and developing them, and holding adversely to the world, for a time longer than the statutory period of limitation, the presumption, as against adverse claimants, is that the location of the claims was regularly made.    (Page 537.)

7. RECORD—NOTICE OF LOCATION.—Failure to file notice of the location of a mining claim within 30 days is not prejudicial if it was recorded before any adverse rights to the same ground were acquired.    (Page 537.)

8. ADVERSE POSSESSION—EFFECT.—Adverse possession of a mining claim on government land for a time longer than the statutory period of limitation renders the claim valid against everyone except the United States.    (Page 538.)

9. ABANDONMENT OF CLAIM—STOPPAGE OF WORK.—Proof that a mining claimant quit work upon its claim temporarily, except annual assessment work, on account of the lack of transportation for the ores taken from the mines, does not establish an abandonment of the claim.    (Page 538.)

10. STOPPAGE OF WORK—RESUMPTION—RELOCATION.—Where a mining claimant failed to perform the annual labor required by Rev. Stat. U. S., § 2324, during certain years, but afterwards resumed the work in good faith, and thereafter annually performed the required amount of labor, no one else had a right to relocate upon the land covered by his claim after such resumption.    (Page 539.)

11. FORFEITURE OF CLAIM—BURDEN OF PROOF.—A forfeiture of a mining claim by the failure of the former owner to perform the annual labor required by law cannot be established except by clear and convincing evidence, the burden of proving which rests upon him who sets it up.    (Page 540.)

Appeal from Marion Circuit Court in Chancery.

ELBRIDGE G. MITCHELL, Judge.

Reversed.

*S. W. Woods,* for appellant.

The plaintiff, a foreign corporation, could maintain the action. Acts 1889, p. 20; Morawetz, Priv. Corp. (2d Ed.), § 665; 1 McCrary, 123; 18 Mo. 229; 52 Ala. 538, 551; 24 Ohio St. 67; 155 N. Y. 373; 129 Mo. 38; Acts Mo. 1889, p. 76; 67 Ind. 549; 45 S. W. Rep. 972. Where an alien makes a mineral location, and the land passes into the hands of a citizen of the United States, said location, though void at first, became valid. 9 Morrison, Mining Rep. 529; Barringer & Adams, Mines & Mining, 202; 12 Dec. Interior Department, 345; 12 Pub. Land Dec. 345. Mineral locations, what necessary. Barringer & Adams, Mines & Mining, 280-6; 4 Mor. Mining Rep. 411, 441; 9 *id.* 529. A mining claim is personal property, and a deed is not necessary to pass title. Barringer & Adams, Mines & Mining, 338; 3 Mor. Mining Rep. 217; 9 *id.* 457. Appellant did not abandon the claims. Barringer & Adams, Mines & Mining, 295; *id.* 300-5; 4 Mor. Mining Rep. 455; 6 *id.* 326. Appellant never forfeited the claims. 1 Mor.

Mining Rep. 32; 6 *id.* 305; Barringer & Adams, Mines & Mining, 301-2. Forfeitures are odious in law, and must be clearly proved. Barringer & Adams, Mines & Mining, 201; 5 Sawy. 439; 6 Mor. Mining Rep. 305. Fraud is never presumed, and must be clearly proved. 9 Ark. 482; 38 Ark. 419; 11 Ark. 378. If work is resumed after forfeiture of claim temporarily by owner, his right is preserved. Barringer & Adams, Mines & Mining, 264; 1 Fed. 522; 11 Fed. 666; Rev. Stat. U. S. § 2324; 1 Mor. Mining Rep. 510; 15 Mor. Mining Rep. 329-341. Forfeiture must be clearly established. 16 Mor. Mining Rep. 125; 5 Sawy. 439. Appellant had capacity to acquire title to mineral claim on government land. Stat. U. S. § 2319; Barringer & Adams, Mines & Mining, 203; 9 Mor. Mining Rep. 529; 20 Dec. Interior Department, 116; 22 *id.* 83; 116 U. S. 418. On a transfer, a mining claim passes to the grantee, and the alienage of the grantee is open to question by the government only. Stat. U. S. § 2332; 152 U. S. Rep. 505; 1 Mor. Mining Rep. 522. Appellant had a right to the claims by reason of seven years' possession. 8 Fed. 863; 17 Cal. 38; 30 Cal. 349. The homestead entry of Schmidt was void. 23 Ark. 735; 43 Ark. 469. The appellant was in actual possession. 40 Ark. 192; 41 Ark. 535. The appellees were trespassers, and their attempted mineral locations were void. Rev. Stat. U. S. §§ 2320-22; Barringer & Adams, Mines & Mining, 264, 307, 689; 11 Fed. 666; 1 Mor. Mining Rep. 541; *id.* 510-22; 113 U. S. 527. Appellant had the right to make the location on the ground in controversy. Barringer & Adams, Mines & Mining, 307; 15 Mor. Mining Rep. 397; *id.* 329; 40 Fed. 787; 15 Am. & Eng. Enc. Law, 544. What is a *lode* or *vein?* 1 Mor. Mining Rep. 566; *id.* 557; 9 Mor. Mining Rep. 529, 578; Barringer & Adams, Mines & Mining, pp. xcix-civ, cvi-cxiii, 437-8; 8 Fed. Rep. 301; 116 U. S. 529; 15 Mor. Mining Rep. 519; 11 Fed. 666; 4 Mor. Mining Rep. 666; Copp's Min. Lands, 52, 53, 352, 453. There is no evidence of a placer deposit on the amended White Eagle Lead & Lode Claim. Stat. U. S. § 2329; Barringer & Adams, Mines & Mining, 476; 73 U. S. 109; Copp's Min. Lands, 83; 128 U. S. 673; 9 Mor. Mining Rep. 614. The court erred in refusing to admit the depositions of Weller and Nichols. 15 Ark. 345; 5 Am. & Eng. Enc. Law, 607; 36 Kan. 468; 75 Me. 156; 10 Cush. 562; 8 Bush, 519; 32 Mo. 411; 8 Bosw. 416; 13 Ia. 564; 32 Wis. 34; 56 Ala. 558; 11 Heisk. 446; 2 S. E. Rep. 837. The court should have made a finding as

to the character of the land involved in the litigation. 5 Am. & Eng. Enc. Law, 376; 2 Beach, Mod. Eq. Pr. §§ 806-809; 29 Ark. 637.

*W. F. Pace,* for appellees.

A mining claim is property. 104 U. S. 279. The locators have the right of possession. U. S. Stat. §§ 2324, 2329; Lindley, Mines, § 363. Appellant forfeited his right to maintain this action. Acts 1899, p. 18; Suth. Stat. Con. §§ 335-6; End. Int. Stat. § 450; Lindley, Mines, §§ 44, 755; 4 Colo. 359; 60 Ark. 325; 24 L. R. A. 315. The locations made by Kaylor and Blake were void from the beginning, and appellant acquired no rights thereunder. Rev. Stat. U. S. § 2324. Appellant abandoned its claim. Lindley, Mines, § 604; 2 Colo. 330; 55 Cal. 257; Lindley, Mines, §§ 654, 643. Appellant's amended location was not made as the law requires. Barringer & Adams, Mines & Mining, 243; Lindley, Mines, §§ 382, 735, 375; Barringer & Adams, Mines & Mining, 306; 104 U. S. 279. Findings by the court are confined to courts at law. 25 Ark. 498. Appellant has failed to show the character of the land in controversy. U. S. Stat. §§ 2320-22, 29; 1 Rice, Ev. 356; 1 Mor. Mining Rep. 557-566; 103 U. S. 839; 2 Mont. 402; 143 U. S. 394; 73 Cal. 109.

*S. W. Wood,* for appellant, in reply.

The law presumes that notice was properly posted. Barringer & Adams, Mines & Mining, 235; 9 Mor. Mining Rep. 625. The description is sufficient. 16 Mor. Mining Rep. 131; 9 *id.* 625; 5 Sawy. 439; 12 Mor. Mining Rep. 178; 4 Mor. Mining Rep. 412; 9 *id.* 515, 543; 67 Fed. 996; 15 Mor. Mining Rep. 329; 2 McCrary, 44; 111 U. S. 356. The validity of the location will be presumed. 3 McCrary, 14; 8 Fed. 863; 12 Mor. Mining Rep. 178. Continuous possession and performance of assessment work disprove abandonment. 1 Mor. Mining Rep. 53; 9 *id.* 318.

*John B. Jones, Amicus Curiae.*

In an adverse suit, each must prove his own title. 17 Colo. 243. In ejectment all the owners need not be joined. 2 Pac. Rep. 920. Title to mining claims may be acquired by statute of limitations. Rev. Stat. U. S. § 2332; Act 1870, § 13; 104 U. S. 636. The patent entitles to possession. Barringer & Adams, Mines & Mining, 568. Mines are governed by the rules governing real prop-

erty. 8 Fed. Rep. 865. Five years' possession before adverse rights exist is a location. 3 Sawy. 634; 9 Nev. 240; 83 Cal. 302; 104 U. S. 279; 114 Cal. 100. Possession of part is possession of all. 17 Cal. 44; 17 Cal. 108. Cutting brush a few days does not overcome the presumption created by a deadening. 34 Ark. 193. If the claim is evidenced by public acts of ownership, much depends on the nature of the property. 30 Ark. 655; 40 Ark. 243. Intention is not sufficient for the acquisition of possession. 42 Vt. 473. A claim under an inadequate and incompetent conveyance is under color of title. 18 How. 50. And, if there is no adverse possession, the law construes the entry as coextensive with the grant. 144 U. S. 509; 148 U. S. 148. Possession continues until interrupted by another. 34 Ark. 193; 17 Cal. 108. Under the pre-emption laws, no man can enter upon the actual possession of another. 100 U. S. 256; 96 U. S. 513; 104 U. S. 279; 17 Cal. 107; 20 Cal. 209; 31 Cal. 390; 30 Cal. 355; 7 Nev. 219; 99 U. S. 262; 100 U. S. 251-6; 11 Fed. Rep. 125-9; 10 Sawy. 246. No one by junior discovery could assert a superior title. 4 Fed. Rep. 705. Actual possession is *prima facie* evidence of title. 6 Colo. 380; 2 Pac. Rep. 919; Lindley, Mines, § 217. Forfeiture does not arise from failure to do annual work; a third party must intervene and a relocation. 1 Mor. Mining Rep. 536; Lindley, Mines, § 651. Forfeitures must be clearly proved. 130 U. S. 301; 1 Fed. Rep. 522; 104 U. S. 279. Failure to work a given year does not divest title. 58 Fed. Rep. 293; 25 Pac. Rep. 785; Lindley, Mines, § 48; 1 Fed. Rep. 522; 104 U. S. 279; 75 Cal. 284; 62 Cal. 160. A party claiming a relocation must show that the work did not amount to a resumption. 1 Nev. 215; 130 U. S. 291. The failure to mark locations is fatal to their validity. Barringer & Adams, Mines & Mining, 228; Lindley, Mines, § 454; Rev. Stat. § 2329; Barringer & Adams, Mines & Mining, 477; 160 U. S. 318; 58 Fed. Rep. 114-5. No record of claim is necessary, unless required by local rules of miners. 1 Fed. Rep. 522. And the description must be by reference to natural objects. 4 Fed. Rep. 704; 60 Fed. Rep. 531; 58 Fed. Rep. 113; 78 Cal. 593; 83 Cal. 296; Lindley, Mines, § 373. Posting notices is no substitute for marking. Barringer & Adams, Mines & Mining, 234, 235, 477; 53 Cal. 149, 217; 4 Pac. Rep. 754. The failure to refer to a natural object makes the description void. 13 Pac. Rep. 543; 8 Colo. 586; 46 Pac. Rep. 661; 27 Pac. Rep. 726; 30 Pac. Rep. 364; 13 Nev. 462. Abandonment

by a locator of mining claim terminates all right of possession. 1 Mor. Mining Rep. 29; 163 U. S. 450; 110 N. Y. 595; 16 Wend. 539; 4 Md. 96; 3 Kent, 448; 1 Mor. Mining Rep. 34. Without discovery of mineral, there can be no location. 13 L. D. 86; 18 L. D. 81; 19 L. D. 568; 22 L. D. 409; 5 McCrary, 298; 115 U. S. 45; 3 Colo. App. 278. Cotenants may take the interest of a cotenant when abandoned by him. 1 Nev. 188.

BATTLE, J. This action involves the validity of mining claims. The Buffalo Zinc & Copper Company alleged in its complaint, substantially, as follows: It was duly organized as a corporation, under the laws of the state of Illinois, on the 3d day of June, 1887, for the purpose of doing a general mining and smelting business, and dealing in mineral lands. Since then it has been engaged in such business.

On the 6th of November, 1886, one Rose Ann Kaylor, in accordance with law, located a lead and lode mining claim, described as follows: " Beginning at the northwest corner of the southwest quarter of the southwest quarter of section 11, in township 17 north, and in range 15 west, and thence running north along the section line 1,500 feet, thence east 600 feet, thence south 1,500 feet, and thence west 600 feet to the place of beginning." Notice of this location was given, and was duly filed for record in the office of the recorder of the Harrison mining district, in which the land was then situated, and was recorded on the 8th of December, 1886; and was also filed for record on the 21st day of January, 1888, in the office of the recorder of Marion county, where the land lies, and was duly recorded. This location was named and known as the " Bell Claim."

On the 6th of November, 1886, one Francis E. Blake lawfully located, as a lead or lode mining claim, the land lying in the county of Marion, in this state, and known and described as follows: " Beginning at the northeast corner of the said Bell claim, and thence running east 600 feet; thence south 1,500 feet; thence west 600 feet; and thence north 1,500 feet to the place of beginning; being a part of the west half of the southwest quarter and the southwest quarter of the northwest quarter of section 11, in township 17 north, and in range 15 west." Notice of this location was given, and was duly filed for record in the office of the recorder of the Harrison mining district, where the land was then situated, on the 8th day of December, 1886, and the same was duly recorded;

and it was also filed for record in the office of the recorder of Marion county, on the 22d day of August, 1890, and was recorded. This location was named and known as the " White Eagle Mining Claim."

On the 20th day of November, 1886, Rose Ann Kaylor and William Kaylor, her husband, for a valuable consideration, sold and conveyed to T. A. Blake all their right, title and interest in and to the White Eagle and Bell mining claims, and put him in possession of the same.

On the 4th of June, 1887, Francis E. Blake, T. A. Blake, and W. P. Beebe, the owners of the Bell and White Eagle mining claims, for a valuable consideration, sold and conveyed said claims to one Fred C. Exter, who, on the 27th of June, 1887, sold and conveyed them to the plaintiff, the Buffalo Zinc & Copper Company, and placed it in the possession of the same.

On the 19th of May, 1898, the plaintiff, in conformity with the law in such cases made and provided, made a corrected location of the White Eagle and Bell mining claims, so as to conform to the lead or lode of mineral pre-empted, and consolidated the two in one claim, and named it the White Eagle Lead or Lode Mining Claim. Notice of location was given, and was duly recorded, on the 19th day of May, 1898, in the office of the recorder of the Rush Creek mining district, where the mining claim was then located.

The defendants in this action attempted to make a location of a placer mining claim upon the lands upon which the mining claims of the plaintiff are located. These lands were valuable for zinc ores found in them in leads or lodes, and are not subject to locations of placer mining claims; and the location of the defendants upon them are therefore void.

The defendants filed an application in the office of the proper land district for a patent to the lands, and notice of the application was published on the 16th of September, 1898. On the 10th day of November next following plaintiff filed, in the same office, an adverse claim to the same land; and proceedings on the application for a patent were suspended during the pendency of this suit.

Plaintiff asked for a decree canceling the placer location of the defendants, and declaring that it is the owner of the lands and entitled to their possession, and other relief.

Frank Pace, S. J. Pace and Harry Pace brought an action against the plaintiff, Buffalo Zinc & Copper Company, S. W. Woods, and the defendants in the action instituted by the Buffalo Zinc & Copper Company, to-wit: G. J. Crump, B. J. Carney, J. C. South, M. N. Dyer, Z. M. Horton, DeRoos Bailey, W. F. Pace, and Arthur N. Sager, to recover the possession of the land claimed by the Buffalo Zinc & Copper Company in its complaint, and claimed to be the owners by virtue of a placer mining location made on the 11th day of April, 1898.

The latter action was transferred to the equity docket, and by consent the two actions were consolidated and heard as one.

Frank, S. J. and Henry Pace answered the complaint of the Buffalo Zinc & Copper Company substantially as follows:

They admitted that Rose Ann Kaylor, on the 6th day of November, 1886, attempted to make the location named and known as the " Bell Claim;" and that Francis E. Blake, on the same day attempted to make the location named and known as the " White Eagle Mining Claim;" and denied all the other allegations in the complaint. They say that the pretended location of Rose Ann Kaylor was illegal, because one E. C. Bartlett, on the 11th day of March, 1885, made a location of a mining claim on the same land, in the manner prescribed by law, which was named " Bon Ton," and was valid and subsisting on the 6th of November, 1886. They allege that the White Eagle Mining Claim was invalid, because one S. E. Williams, on the 12th day of March, 1885, segregated and appropriated the land on which it was located by entering upon and locating thereon a mineral claim, known as the " Small Hope," in the manner and form required by law, and that it was in full force when the White Eagle Mining Claim was located. They aver that, if the Buffalo Zinc & Copper Company acquired an interest or title in and to the lands in controversy by locating the White Eagle and Bell mining claims thereon, it abandoned and forfeited it on the 14th day of February, 1892, by entering and locating thereon a placer mining claim, and by permitting and causing one August Schmidt, on the 13th day of April, 1892, to enter the land as a homestead, and to occupy the same for a full period of five years, with the fraudulent intent of acquiring the same, through Schmidt, as agricultural lands. They aver that, if the Buffalo Zinc & Copper Company acquired any interest or title in and to the lands upon which the Bell and White Eagle

mining claims are located, it forfeited the same by failing to do the assessment work required by law in such cases for the years 1893, 1894, 1895, 1896, and 1897. They alleged that they peaceably entered and located a placer claim upon the lands in controversy. They alleged that the Buffalo Zinc & Copper Company ought not to maintain their action, because it is a foreign corporation, and has not filed in the office of the secretary of state a copy of its charter or articles of incorporation or association, and has not designated an agent, who is a citizen of this state, upon whom summons or other process may be served, and has not filed a certificate with the secretary of state, showing its principal place of business in this state. And they asked that their answer be taken and considered as a cross complaint against the Buffalo Zinc & Copper Company, and that they have judgment for the land.

The defendants, G. J. Crump, B. J. Carney, J. C. South, M. N. Dyer, Z. M. Horton, and W. F. Pace answered the complaint of the Buffalo Zinc & Copper Company, adopted the answer of Frank, S. J. and Henry Pace as their own, and alleged that, on the 28th day of December, 1897, they located a mining claim on the lands in controversy, and called it the "White Eagle Placer Mining Location," and thereupon entered, begun and carried thereon mining operations, and expended large sums of money in developing the same, and at all times thereafter have continued in possession and expended money and labor upon the same; and on the 16th day of September, 1898, made application to the United States for a patent thereto in the manner and form required by law. And they asked for judgment for the land.

The Buffalo Zinc & Copper Company answered the cross complaint of Frank, S. J. and Henry Pace, and denied all the allegations therein inconsistent with its complaint.

The court, after hearing the evidence adduced by both parties, found that the defendants were entitled to the possession of the land, and that the plaintiff, Buffalo Zinc & Copper Company, was, in equity, entitled to recover the sum of $10,000 for moneys expended by it in developing said property, but refused to determine whether it was lead or lode or placer ground, and rendered a decree in favor of the defendants for the land, and decreed that the plaintiff have a lien on the same for the $10,000, provided it assented to and ratified the decree within forty days; and the plaintiff appealed.

The following questions are presented by the pleadings and evidence in this case for our consideration and decision:

First.  Did appellant, by a failure to comply with the terms of an act entitled "An act to prescribe conditions upon which foreign corporations may do business in this state;" approved February 16, 1899, lose its right to maintain this action?

Second.  Was the mining claim of appellant located upon a lead and lode of mineral?

Third.  Were the locations of the Bell and White Eagle claims by Rose Ann Kaylor and Francis E. Blake valid?

Fourth.  Did appellant abandon or forfeit the Bell and White Eagle lead and lode claims?

Fifth.  Did the appellant have the right to amend the Bell and White Eagle claims?

We shall consider these questions in the order stated.

1.  Section 1 of the act of February 16, 1899, provides that every foreign corporation, "before it shall be authorized or permitted to transact business in this state, or to continue business therein, if already established, shall, by its certificate under the hand of the president and seal of such company or corporation, filed in the office of the secretary of state of this state, designate an agent * * * upon whom service of summons and other process may be made," and state its principal place of business in this state.  Section 2 provides that every foreign corporation, doing business in this state, shall file in the office of the secretary of state of this state a copy of its charter, articles of incorporation or association, or certificate of incorporation.  Section 3 provides that any corporation which shall refuse or fail to comply with the act shall be subject to a fine of not less than $1,000, and shall not "maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort;" and section 4 provides that "any foreign corporation that has heretofore engaged in business, or made contracts in this state, may, within ninety days after the passage of this act, file such copy of articles of incorporation, together with certificate of appointment of an agent upon whom service of summons or other legal process may be had, in the office of the secretary of state, and pay the requisite fees thereon, as provided by this act."

This action was commenced in December, 1898, before the act of February 16, was passed; and the plaintiff, a foreign corpo-

ration, filed a copy of its articles of incorporation and a certificate of the appointment of an agent, upon whom service of summons and other legal process may be had, in the office of the secretary of state, on the 18th of August, 1899, during the pendency of the action.

Appellant contends that it was not necessary to file a copy of its articles of incorporation or a certificate of appointment of an agent, in order to maintain this action, because it is not a suit or action upon any demand arising out of a contract or tort. But it is not necessary to decide that question. The act of February 16 does not expressly prohibit the institution of an action because of a failure to perform any condition, nor does it intend to forever prohibit the maintenance of any action because the plaintiff therein is a foreign corporation, and has not within any particular time complied with its terms. Penalties are imposed on account of past conduct or omissions. The penalties of the act in question are, doubtless, intended to compel an observance of its terms. When that is done, its purpose is accomplished, the condition upon which the right to maintain an action depends is performed, and the plaintiff can in the future prosecute it to a final judgment. *Carson-Rand Company* v. *Sterne,* 129 Mo. 381.

The institution and prosecution of an action are not doing business within the meaning of the act of February 16, 1899, and of other statutes upon the same subject. *Railway Company* v. *Fire Association,* 55 Ark. 174.

The appellant complied with the act, and has the right to prosecute its suit until it is finally disposed of in due course of law.

2. Was the mining claim of appellant located upon a lead and lode of mineral?

It is difficult to define what is meant by a lead, lode or vein of mineral matter. The first reported case in which a definition was attempted is the *Eureka Case,* 4 Sawyer, 302, 311. The court, after observing that the word was not always used in the same sense in scientific works on geology and mineralogy and by those actually engaged in the working of mines, said: "It is difficult to give any definition of the term, as understood and used in the acts of congress, which will not be subject to criticism. A fissure in the earth's crust, an opening in its rocks and strata made by some force of nature, in which the mineral is deposited, would seem to be essential to the definition of a lode, in the judgment of geolo-

gists. But, to the practical miner, the fissure and its walls are only of importance as indicating the boundaries within which he may look for and reasonably expect to find the ore he seeks. A continuous body of mineralized rock, lying within any other well defined boundaries on the earth's surface and under it, would equally constitute, in his eyes, a lode. We are of opinion, therefore, that the term, as used in the acts of congress, is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rocks." The supreme court of the United States in *Iron Silver Mining Company* v. *Cheesman,* 116 U. S. 529, 534, followed this citation by observing: "This definition has received repeated commendation in other cases, especially in *Stevens* v. *Williams,* 1 McCrary, 480, 488, where a shorter definition by Judge Hallett, of the Colorado circuit court, is also approved, to-wit: In general, it may be said that a lode or vein is a body of mineral, or mineral body of rock, within defined boundaries, in the general mass of the mountain." And the same court, in the same case said: "The lode or vein must be continuous in the sense that it can be traced through the surrounding rocks, though slight interruptions of the mineral-bearing rock would not be alone sufficient to destroy the identity of the vein. Nor would a short partial closure of the fissure have that effect if a little further on it recurred again with mineral-bearing rock within it." *Iron Silver Mining Company* v. *Cheesman,* 116 U. S. 538. We accept this interpretation of the acts of congress as correct.

The validity of the location of the Bell and White Eagle mining claims depend upon the acts of congress. They are located under these acts, and derive their whole force, strength and support from them. In determining, therefore, whether they were located upon a lode or vein of minerals, we are governed by the meaning of those terms as used in the statutes of the United States. It can serve no useful purpose to set forth the evidence adduced by the parties upon this issue. It would require too much time and space to do so. It is sufficient to say that, in our opinion, the preponderance of the evidence in the case shows that the claims in question were located upon a lode or vein of minerals, in the sense those terms are used in the laws enacted by congress; and we so decide.

3. Appellees insist that the locations of the Bell and White

Eagle claims as made by Rose Ann Kaylor and Francis E. Blake were invalid. They say that the description of the Bell claim in the notice of location by Kaylor was insufficient. It is as follows: "Beginning at the northwest corner of Ed Williams, 1-16, at a black oak post; thence 1,500 feet north between sections 10 and 11 to a dogwood bush; thence 600 feet east to a dogwood bush; thence 1,500 feet south to oak post in Williams' field; thence 600 feet to place of beginning. This being in the northwest quarter of the southwest quarter, section 11, township 17, range 15 west." They base their contention upon the fact that there is nothing in the record which shows what is meant by "Ed Williams, 1-16," named in the notice as the beginning point. But it does show that it was at a black oak post, and 1,500 feet north of it was a dogwood bush between sections 10 and 11, which must have been on the line between those sections, and that the claim described was in the northwest quarter of the southwest quarter of section 11, township 17, range 15 west, in Marion county, in this state. The presumption is that it (Ed Williams, 1-16) is a well known natural object, until the contrary appears. *Hammer* v. *Garfield Mining & Milling Company,* 130 U. S. 291; S. C. 16 Mor. Mining Rep. 125, 132. And nothing is shown to the contrary. The sufficiency of the description is not attacked upon any other ground.

What we have said of the Bell claim is equally true of the White Eagle claim.

They further insist that there is no evidence to show that the notices of the location of these claims were posted on them, but the evidence does show that the appellant purchased the Bell and White Eagle claims, and that they were conveyed to it by the vendor, and that it has been in possession controlling and developing them, and holding adversely to all the world, for a time longer than the statutory period of limitation. As against all adverse claimants, the presumption is that the location of the claim of appellant was regularly made. *Harris* v. *Equator Mining & Smelting Company,* 3 McCrary, 14; S. C. 12 Mor. Mining Rep. 178; *Cheesman* v. *Hart,* 42 Fed. Rep. 99.

They say that the notices of the location of these claims were not recorded within thirty days. The record shows that they were recorded before any adverse rights to the same ground were acquired. This is sufficient. No damage was done by the failure, and no one can complain that it was not done at an earlier date.

*Faxon* v. *Barnard,* 2 McCrary, 44; S. C. 9 Mor. Mining Rep. 515; *Preston* v. *Hunter,* 67 Fed. Rep. 996; *McGinnis* v. *Egbert,* 8 Colo. 41; S. C. 15 Mor. Mining Rep. 329.

Appellees contend that the original locations of the Bell and White Eagle claims were void, because the land covered thereby was not subject to location at the time they were made; E. C. Bartlett and S. E. Williams having previously, on the 12th of March, 1885, made mining locations, known as the "Bon Ton" and "Small Hope" claims, on the same land. The evidence indicates that Bartlett and Williams had abandoned their claims when the Bell and White Eagle claims were located. After locating the Bon Ton and Small Hope claims, they never undertook to develop and maintain them. The Bell and White Eagle claimants took possession and held and developed them by work and labor performed, and held adverse possession of the same for a longer time than the period of limitation prescribed by statute. This was sufficient to render their claim valid against every one except the United States. *Glacier Mt. S. M. Co.* v. *Willis,* 127 U. S. 471; *Francoeuer* v. *Newhouse,* 43 Fed. Rep. 236; *Four Hundred and Twenty Mining Company* v. *Bullion Mining Company,* 3 Sawyer, 634; *Harris* v. *Equator Mining & Smelting Company,* 3 McCrary, 14.

4. Did appellant abandon or forfeit the Bell and White Eagle lead and lode claims?

Appellees alleged that appellant made a placer location upon 160 acres, including the ground upon which the Bell and White Eagle lead and lode claims were located, and thereby abandoned the latter. But this was disproved by the evidence. W. Q. Seawel, as agent, undertook to make such a location, but did so without authority, and appellant refused to ratify it.

The next contention is that appellant abandoned the Bell and White Eagle mining claims by quitting work upon them and closing them up, and causing August Schmidt to enter the land embraced by the same, together with other lands amounting in the aggregate to 160 acres, as a homestead. An abandonment is a voluntary act, and consists of the relinquishment of possession of the claim with an intention not to return and occupy it. It is purely a question of intention. "If there is no *animus revertendi,* the desertion of the claim determines the property at once, without regard to the duration of the locator's absence." To constitute an abandonment, there must be an absolute desertion of the premises.

The burden of proving it is upon him who asserts it.   2 Lindley, Mines, § 643.   In this case the appellant quit work upon its claims temporarily, except annual assessment work, on account of the lack of transportation for the ores taken from the mines. August Schmidt entered the land as a homestead, but without the consent of appellant.   There was no agreement or understanding that he would hold the land for its benefit.   The evidence is insufficient to prove that it did or intended to relinquish its claims.

Appellees allege that appellant forfeited the Bell and White Eagle mining claims by the failure to perform the annual labor required by law.   Section 2324 of the Revised Statutes of the United States provides, among other things, as follows:   "On each (mining) claim located after the 10th of May, 1872, and until patent has issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year.   But where such claims are held in common, such expenditures may be made upon any one claim; and, upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made; provided, that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure and before such location." Under this statute, if an original locator, his heirs or assigns, should fail to perform work in any year, and should thereafter resume work in good faith before any location is made, he thereby preserves his right to the claim.   His rights then stand as they would if there had been no failure to comply with this condition of the law; and no one has a right to relocate upon the land covered by his claim after such resumption of work in good faith.   *Belk* v. *Meagher,* 104 U. S. 279; *North Noonday Mining Company* v. *Orient Mining Company,* 1 Fed. Rep. 522, 536.

As said in *Belk* v. *Meagher,* 104 U. S. 284, "Mining claims are not open to relocation until the rights of a former locator have come to an end. * * * The right of location upon the mineral lands of the United States is a privilege granted by congress, but it can only be exercised within the limits prescribed by the grant. A location can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail.   Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior

locator, but the whole world, because the law allows no such thing to be done."

A forfeiture of a mining claim by the failure of the former owner to perform the annual labor required by law cannot be established except by clear and convincing evidence. The burden of proving it rests upon him who sets it up,—in this case upon the appellees. *Hammer* v. *Garfield Mining & Milling Company,* 130 U. S. 291, 301.

The grantors of appellant located their mining claims, the Bell and White Eagle, in the year 1886. They and appellant held and controlled the same until 1897 and 1898, when appellees undertook to locate claims upon the same and other lands and to take possession thereof. Saying nothing of the work done by appellant in previous years, we think the evidence satisfactorily shows that it in good faith annually performed the work required by the statutes of the United States in the years 1895, 1896, 1897 and 1898, and until the commencement of this suit. The attempted location of appellees was therefore void, and the effort to take possession was a trespass.

5. Appellant amended the location of its Bell and White Eagle mining claims. Appellees insist in this court that the amendment was not made in the manner prescribed by law. But that was not in issue in the trial court. Appellant alleged in its complaint as follows: "Plaintiff further states that on the 19th day of May, 1898, plaintiff, being the owner of and in possession of all that part of said White Eagle and Bell mining claims that was not embraced in the homestead of August Schmidt as corrected by the secretary of the interior, made a corrected location of said mining claims, so as to conform to the lead or lode of mineral; and embraced said lands in one claim, containing about 17.60 acres, and named the White Eagle Lead and Lode Mining Claim, and situated and embracing most of the south half of the northwest quarter of section 11, township 17 north, of range 15 west. That said amended location was made in conformity to the laws of the United States, the laws of the state of Arkansas, and the laws and usages of the Rush Creek mining district, where said mining claim is located. That said location notice was duly recorded in the office of the Rush Creek mining district on the 9th day of May, 1898, in record book K, on pages 44 and 45." And appellees answered as follows: "They deny that plaintiff,

Buffalo Zinc & Copper Company, had any right or authority to make the said pretended change and correction of what it claims to be its lode or lead mineral claim. * * * They aver that, as alleged in their original complaint filed herein, which said complaint is here referred to and asked to be taken and considered in connection with this pleading, that long before said pretended change of survey by said plaintiff, Buffalo Zinc & Copper Company, these plaintiffs (defendants) had, in manner and form required by law, peaceably entered upon and made August Placer Mineral Location, covering all the land involved in this controversy and all the lands mentioned and described in these plaintiffs' (defendants') original complaint, and was holding the same at the time the said plaintiff, Buffalo Zinc & Copper Company, entered thereon for the purpose of making said pretended change in what they claimed to be their lead and lode, and aver that said entry by said plaintiff, Buffalo Zinc & Copper Company, was without right or authority of law, and that such entry was a trespass on the rights of these plaintiffs (defendants)." The complaint and answer show that the legality and sufficiency of the amendment of the location were not questioned, except the right of appellant to enter upon the land for the purpose of making the same, and that, we have seen, it could lawfully do. It was unnecessary to prove or show that which was, expressly or impliedly, admitted by all the parties.

It follows that the mining claims of the appellees, so far as they conflict with that of appellant, as amended, should have been canceled by the trial court.

It is therefore ordered that the decree appealed from be reversed, and that this cause be remanded with instructions to the court to enter a decree in accordance with this opinion.