FISHER v. CRESCENT OIL CO. (No. 811.)†

(Court of Civil Appeals of Texas. Amarillo. June 12, 1915. Rehearing Denied June 26, 1915.)

1. MINES AND MINERALS ⬤═▷73½—CONVEYANCES AND LEASES—CONSTRUCTION—TESTING OR WORKING.

Complainant, in consideration of $6,400, conveyed all the oil and other minerals in certain land described, with the right of entry to drill and operate for oil, reserving one-eighth of all the oil produced, the lease to be void if the lessees did not commence operations by a certain date, and providing that if oil was discovered the lease should be in effect for 25 years thereafter, which conditions extended to the heirs and assigns of the parties. The lessees assigned to two different assignees, one of whom within the time prescribed brought in a producing oil well, which failed in about a year, after which the casing was drawn out, and the other of whom drilled a well which proved to be dry. *Held*, in the lessor's suit against the second assignee to cancel the lease, that the discovery of oil by one of the assignees executed the contract and vested rights under the entire lease for the 25 years specified, but required the lessees to continue operations during such term, and that their failure to operate would work a forfeiture, though a temporary cessation of work would not.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 200; Dec. Dig. ⬤═▷73½.]

2. MINES AND MINERALS ⬤═▷77—CONVEYANCES AND LEASES—CONSTRUCTION—"ABANDONMENT"—"FORFEITURE."

"Abandonment," with reference to oil leases or contracts, is the relinquishment of a right, resting upon the intention of the parties, and if the owner sees proper he may abandon his rights, and evidence his intention to do so by any act legally sufficient to vest or divest the ownership, but a vested title cannot ordinarily be lost by abandonment; and "forfeiture," as distinguished from "abandonment," does not rest upon the intent to release the premises, but is an enforced release.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 204; Dec. Dig. ⬤═▷77.

For other definitions, see Words and Phrases, First and Second Series, Abandon; Forfeit.]

3. MINES AND MINERALS ⬤═▷77—CONVEYANCES AND LEASES—ACTION — QUESTION FOR JURY—INTENT TO ABANDON.

Evidence, in a lessor's suit to cancel his lease of oil lands on the ground of the lessees' abandonment, *held* to make the intent to abandon a question of fact, and to sustain a finding that there was no such intention.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 204; Dec. Dig. ⬤═▷77.]

4. APPEAL AND ERROR ⬤═▷1010—REVIEW—QUESTIONS OF FACT—FINDINGS.

Where the facts authorize the conclusion of the court trying the case without a jury, the Court of Civil Appeals would not be warranted in setting aside its judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. ⬤═▷1010.]

Appeal from District Court, Wichita County; E. W. Nicholson, Special Judge.

Suit by J. A. Fisher against the Crescent Oil Company. Judgment for defendant, and plaintiff appeals. Modified and affirmed.

Carrigan, Montgomery & Britain, of Wichita Falls, for appellant. Huff, Martin & Bullington, of Wichita Falls, for appellee.

HUFF, C. J. The appellant instituted this suit in the district court of Wichita county, November 19, 1913, against the appellee, Crescent Oil Company, to cancel the following lease:

"Know all men by these presents:

"That I, J. A. Fisher, of Wichita county, Texas, the party of the first part, in consideration of the sum of one dollar paid by W. K. Ward, Jas. Langford, C. H. Clark, L. C. Hivick, T. H. Harbin, parties of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said parties of the second part, their heirs and assigns all of the oil, gas and coal and other minerals in and under the following described land, together with the right of ingress and egress, at all times for the purpose of drilling, mining and operating for minerals, and to conduct all operations and to lay all pipe necessary for the production, mining and transportation of the oil, gas, water, coal or other minerals, with the right to remove all machinery, fixtures and improvements placed thereon at any time, reserving, however, to the parties of the first part the equal one-eighth of all oil produced and saved upon said premises, to be delivered in the pipe line to the credit of the party of the first part, free of charge.

"If coal is found, the parties of the second part agree to pay to the first party four cents per ton for every ton of the same that is mined and marketed, payable quarterly; if gas or other minerals are found, second parties agree to pay the first party five hundred dollars, for the product each year, payable quarterly, for the product of each well while the same is being used off the premises, the party of the first part, by furnishing his own pipe and connections, shall have sufficient gas free of cost for use in one dwelling house on the premises, so long as the gas is utilized off the premises, but at his own risk.

"Whenever the first party shall request it second party shall bury all oil and gas lines, and pay all damage done to the growing crops by reason of burying and removing the same.

"No well shall be drilled within 200 feet of any building now on said premises, without the consent of the first party.

"Said land being of the following description, to wit: N. W. ¼ and S. E. ¼ of section 10, H. T. & B. R. R. Co. in Wichita county, Texas, as shown by the official map of said county.

"In case parties of the second part shall drill for oil, gas or other minerals and not find same, then, in that event, they shall not be required to begin a second hole in less than twelve months from the completion of said first hole.

"To have and to hold the above-described premises, unto the said parties of the second part, their heirs and assigns, on the following conditions: In case operations for either the drilling of a well for oil, gas mining or other minerals is not commenced and prosecuted with due diligence, on or before November 15, 1911, then this grant shall immediately become null and void as to both parties.

"In case the parties of the second part shall bore and discover either oil, gas or other minerals, then in that event this grant, incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of discovery of said product, and as much longer as oil, water, gas or other minerals can be produced in paying quantities thereon.

"Whenever sales are being made of the product produced on the land above described a settlement thereof shall be made at the end of each quarter.

---

⬤═▷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

"This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purpose herein mentioned, and it is so understood by both parties to this agreement.

"Said second parties shall have a reasonable extension on this lease if they are unable to secure water for drilling at a reasonable price, not to exceed $5.00 per day. If said second parties drill a well that produces on an average of one hundred barrels per day for sufficient time to pay same, then they shall pay to first party the sum of $1,000.00 from the production of said well.

"It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators and assigns.

"Witness our hands this the 25th day of August, 1911." [Signed and acknowledged by the parties.]

The petition sought to cancel the lease as to 240 acres of the land described in the lease, of which the Crescent Oil Company had a transfer. It is alleged that the appellees had abandoned and forfeited their lease and rights. The evidence in this case shows that the lessees named in the lease paid to appellant Fisher $6,400 for the lease, and this fact is undisputed and admitted by Fisher, while the lease recites only one dollar consideration.

The lessees named in the lease conveyed all the leasehold estate of the lessees to the Crescent Oil Company, in and to the south 240 acres of land described in said lease on November 7, 1911, and also transferring 80 acres of the 320-acre tract on the same date to Russell and Flannigan. Fisher admits that Russell and Flannigan, before November 15, 1911, began work on a well on the 80-acre tract; that the well was finished some time in July, 1912, in which oil was obtained at the depth of 1,645 feet; that the oil produced, when it was first pumped, was about 40 barrels per day, and it continued to diminish after a few days until March, 1913, and until only a small quantity could be obtained, when pumping operation ceased, and in August, 1913, some time, Russell and Flannigan drew the casing out of the well. However, before doing so, they sank the well to the depth of 2,000 feet in order to make it a producing well. The Crescent people began to drill on their 240-acre tract some time in October, 1912, and drilled a well to the depth of 2,000 feet, which proved to be a dry well. They finished this well to that depth some time in December, 1912, since which time they have done nothing further towards drilling or bringing in a well. Fisher requested the officers of appellee company and gave them notice to develop or drill, and for various reasons assigned by them they deferred the matter; one of the officers stating, when being threatened with suit, that they told Mr. Fisher if he would not sue they would drill another well. Nothing, however, was done on the land, and suit was filed in this case November 19, 1913. It appears that the assets of the Crescent Oil Company consist of this lease and possibly some machinery and a small amount of money. Russell

and Flannigan are not operating now in that field, but before leaving they sold or transferred their interest under the lease to Mr. Bullington, who at the time of this suit owned the same. Mr. Flannigan testifies that, when the pump was first started on the well, it started off producing about 35 barrels per day, and it was pumped about six or eight months; the production gradually decreased until they quit pumping, and the well failed. They paid Mr. Fisher his part of the royalties named in the contract during the time the well was operated. He testifies that the oil, when they first began to pump, paid more than the operating expenses, and a small surplus over the cost of production.

Mr. Flannigan, of the partnership of Russell and Flannigan, testified that they quit operating in Texas because it was too far and expensive to come from Tulsa, Okl., to Texas, to operate their leases, and they sold the same to Bullington. It is admitted that Bullington was the owner of this 80-acre lease at the time of the trial.

The cause was tried before the court without a jury, and the court rendered judgment for the appellees reciting in the judgment that the defendant produced oil in paying quantities and that thereupon said leasehold estate became vested for 25 years from the date of production, and that the lease had never been abandoned, rendering judgment that the appellants take nothing, etc.

[1] In determining the rights of the parties to this case, it will be necessary to consider the terms of the lease and the acts done thereunder by either of the assignees of the original lessees, in order to meet the conditions of the contract. It will be noted by the terms of the contract that it is especially provided all conditions therein shall extend to the assigns of the parties thereto. Before the time provided in which the contract was to be commenced, the lessees assigned 240 acres of the lease to the appellee and 80 acres thereof to Russell and Flannigan, who drilled a well on the land assigned to them and found oil in their well, which produced 35 or 40 barrels per day, but it gradually failed, when some time in March it was abandoned as a producing well. The appellee put down a well on its 240 acres, which was over 2,000 feet in depth, but did not produce or find any oil. If it shall be determined under the terms of the contract that discovering oil on the land leased was a compliance with the condition of the contract, then we believe it was sufficient, if either of the assignees discovered oil, to vest the right in the entire lease for the 25 years specified. It is not stipulated in the contract that oil should be discovered under any particular portion of the land or discovered in more places than one, but if oil was discovered the conveyance "shall be in full force and effect for twenty-five years." The conveyance so continued was not to any particular portion of the land or to the land where the oil was discovered, but

"this" conveyance, which was 320 acres, and which includes the land of appellee, was in full force and effect. We therefore hold that the discovery of oil by one of the assignees inured to the benefit of both and to both parcels of land, in so far as it had the effect of vesting the right. South Penn Oil, etc., v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848. If operation or drilling should be commenced by November 15, 1911, and prosecuted with due diligence, and if the lessee should bore and discover oil, the conveyance to the 320 acres of land was to be in full force and effect for 25 years from the discovery of the product and as much longer as the product should be produced in paying quantities. It is not a controverted fact that the operation was begun within the prescribed time and was prosecuted with due diligence, and oil was discovered on the land, and one of the assignees testifies in paying quantities, which is not disputed. The lessees had paid $6,400 for the privilege of testing for oil, and when they did so we think this had the effect of conveying to them and their assigns a right to mine and operate the land for oil for 25 years; to that extent the contract was executed. The condition upon which the lease was given had then happened. Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396; Great, etc., v. Carpenter, 43 Tex. Civ. App. 229, 95 S. W. 57; National Oil, etc., v. Teel, 95 Tex. 586, 68 S. W. 979. When the assigns or lessees performed the conditions of the contract, if it was an option or a unilateral contract, before the time named, it became an executed contract by such performance, which gave them an enforceable right, and for 25 years they had a right on the land unless by some act they forfeited their right or abandoned or surrendered the same. They became tenants of the lessor by agreement for the specified term and not at will. This was a vested right of which they could not be divested at the will of the lessor. O'Neil v. Sun Co., 123 S. W. 172; South Penn Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848, on pages 860 and 861; McAfee v. Grubb, 164 S. W. 925.

In the last case a writ of error was granted by the Supreme Court. Counsel for appellant quote what purports to be the indorsement of that court on the petition for writ of error therein, as follows:

"Granted. We are inclined to the view that, if the lessee entirely abandoned the property, the lessor was entitled to recovery."

Certainly that must be correct. If the lessee entirely abandoned the property, the lessor could re-enter. This indorsement does not affect the soundness of the proposition if the lessee performed the conditions of the contract he would then have a vested right to mine the land for oil.

We are inclined, however, to believe with appellant that the contract in question has an implied obligation, if not express, that the lessees would continue to mine and operate the lease for the production of oil during the

time of its continuance, and that, as a part of the consideration for the lease, one-eighth of the oil so produced should be delivered to the lessor free of charge. The contract itself evidences the fact that the parties thereto so understood it. There is a stipulation therein, if a 100-barrel well was brought in, the lessees would pay to the lessor $1,000 therefor, out of its products. The first paragraph of the contract clearly evidences that the right of ingress and egress was given for the purpose of drilling and to conduct all operations relating thereto, and to lay pipes necessary for production and transporting oil, and that the lessor should receive one-eighth of the oil saved upon the premises, to be delivered by pipes to his credit, free of charge. This provision and others clearly evidence it was the purpose not only to prospect for and discover oil, but it was the purpose to produce, transport, and drill for oil, and the pipes were to be laid for that purpose. Certainly mere discovery did not require the performance of all these things set out in the provision. It would be a strained construction to hold after oil was discovered that the lessor relinquish for 25 years all right to this oil or the revenues to be derived therefrom. This clearly was not the intention of the parties. The agreement implies that the lessees or their assigns will produce oil upon the discovery during the term and will pay one-eighth of the oil as a royalty for such right. This was a condition subsequent. A failure on the part of the lessees or their assigns to perform this implied obligation of the contract would work a forfeiture. Our Supreme Court has said:

"Although there was no express agreement or requirement that Hunt should operate the mine if, on development, it was found to contain coal which could profitably be worked, yet there was an implied agreement to that effect, and a substantial failure in this respect ought to be held ground for forfeiture." Benavides v. Hunt, 79 Tex. 394, 15 S. W. 401.

Again, in that case it was said:

"In cases in which the grantor has no pecuniary interest in the continuous possession and use of property conveyed on conditions subsequent, a failure to use for many years has been held not to operate a forfeiture. Osgood v. Abbott, 58 Me. 73; Mills v. Seminary, 58 Wis. 135, 15 N. W. 133. The rule, however, ought not be so latitudinous in cases in which the grantor is expected to be benefited by the use, and when contemplated profits to be derived from the use forms in part the consideration for the grant; but even in this class of cases it has been held that temporary cessation to use does not forfeit the grant." Id.

We cite also the following cases: Guffey, etc., v. Oilver, 79 S. W. 888; Parish Fork Oil Co. v. Bridgwater, etc., 51 W. Va. 583, 42 S. E. 655, 59 L. R. A. 566; Heintz v. Shortt, 149 Pa. 286, 24 Atl. 316. We do not believe, however, a temporary cessation of work in operating or drilling on the land for oil should work a forfeiture of the lease; especially so in this case, where the evidence shows that $6,400 was paid in the first place and large expenditures made by the assignees in drilling two wells on their respective tracts.

The evidence, we think, should show more than just the abandonment of the wells, one of which ceased to produce after having been brought in and in the other no oil was obtained. We think it would be unreasonable to require a continued pumping of the well which had ceased to pay anything or to leave the casing in the other in which there had never been any oil. We do not think the facts conclusive that the lease was forfeited. South Penn Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848. If the lessees or their assigns discovered oil and prosecuted their discovery with diligence and in good faith, even if they should exhaust their well, or obtain one producing no oil, we do not think a forfeiture should be declared as a matter of law. The mere cessation ought not alone produce a forfeiture, unless the facts clearly evidence an abandonment of the lease. The appellant asserts that the assignees have abandoned the lease and that the trial court should have so found.

[2] The distinction between "forfeiture" and "abandonment" with reference to contracts of this kind is so shadowy that in discussing the one necessarily the condition of the other is involved. However, "abandonment" rests on the intention of the parties, while "forfeiture" does not rest upon intent to release the premises, but is an enforced release. A vested title cannot ordinarily be lost by abandonment unless there is satisfactory proof of an intention to abandon. Of course, if no oil had been found, as required by the conditions of the contract, the title would have been inchoate, and when unsuccessful search was abandoned the right ended; but the discovery of the oil on the land vested a right to continue the search elsewhere and to operate for 25 years, and the mere fact that the oil was exhausted in one well, and not found in the other, did not divest the right already vested. It therefore became necessary in this case for the appellant to show an intention on the part of appellee to abandon the lease. Garrett v. South Penn Oil Co., 66 W. Va. 587, 66 S. E. 741; Smith v. Root, 66 W. Va. 633, 66 S. E. 1005, 30 L. R. A. (N. S.) 176; Steelsmith v. Gartlan, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107; Benavides v. Hunt, supra.

[3, 4] "Abandonment" is the relinquishment of a right. If the owner sees proper, he may so abandon and evidence his intention by any act legally sufficient to vest or divest the ownership. Phillips v. Watkins, etc., 90 Tex. 195, 38 S. W. 270–274 (3), 470. The existence of the intent to waive or abandon the right on the land was a question of fact for the court trying the same, and, if the facts would authorize the conclusion that there was no such intention, we would not be warranted in setting aside the judgment. Railway v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 748, 749; Buffalo Zinc, etc., v. Crump, 70 Ark. 525, 69 S. W. 572, page 576 (4), 91 Am. St. Rep. 87.

The evidence in this case at most shows that appellee had abandoned work on a dry well and removed therefrom the casing. We see no reason why one who has a vested right should lose his lease because he thereafter was unfortunate enough to drill a dry well. He had the right to continue thereon so long as he may desire to do so, and a temporary cessation of work of itself is not sufficient to show abandonment. While the facts show in this case that the lessor demanded that appellee proceed with the work, it is not yet shown that the appellee refused because it had abandoned the lease. It does appear when suit was threatened that appellee through its officers, said they would proceed with the work if suit was not instituted. This at least was some evidence of an intention not to abandon. It is urged that Russell and Flannigan sold out and left the country for Oklahoma. This is not evidence that the lease was abandoned; but it evidences that it was recognized as a subsisting and valid interest in the land subject to sale. We think the court had sufficient evidence to show there was no abandonment of the contract. The case relied on by appellant is the case of Steelsmith v. Gartlan, supra. That case was based on an option contract to drill a well and obtain oil in paying quantities. The royalty to be derived therefrom was the only consideration therefor. The lessee therein drilled a dry hole, and the court therein held this was not a compliance with the contract, and hence there was no right vested. The amount expended in drilling the dry well did not affect the matter. In this case the condition of the contract was complied with, and oil was discovered, and the witness testifies in paying quantities at the time of its discovery. The condition required was not that oil should be found in paying quantities. Quantity had nothing to do with vesting the right under the contract until after the expiration of 25 years, and at which time the lessee had the right to continue if the oil was in paying quantities; and another distinguishing feature in this case from the Steelsmith Case is that the lessee paid $6,400 in advance, and clearly paid a consideration for the privilege contracted for.

As we understand the judgment of the trial court, it vests in appellee the right in the land for 25 years. We believe that the judgment should be so drawn that, if appellee should hereafter forfeit its right or abandon the lease, the appellant should have the right of re-entry or to recover the leased property; and to prevent any misunderstanding in the future, as to the effect of the judgment, this court will add to the judgment that the same shall not be considered a bar to any other action, should appellee hereafter forfeit his right under the lease contract or abandon same, or deprive appellant of the right of re-entry, in case of such forfeiture or abandonment.

With this addition, the judgment of the court below will be affirmed.